# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-51061

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

DAVID ANDREW DIEHL, also known as David A. Diehl,

      Defendant - Appellant

United States Court of Appeals
Fif h Circuit

**FILED**
February 13, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas

Before PRADO, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

In October 2011, upon his conviction of ten counts of sexual exploitation of a child and child pornography, David Andrew Diehl was sentenced to 600 months in prison and five years of supervised release. Pursuant to 18 U.S.C. §§ 3013 and 3571, Diehl was also ordered to pay criminal monetary penalties consisting of a $1000 special assessment and a $1000 fine. At sentencing, the district court specified that the special assessment "shall be paid immediately." The district court did not specify when the fine was to be paid. The written judgment confirmed that "[p]ayment of [the special assessment] shall begin immediately." For the fine, the written judgment, unlike the oral pronouncement at sentencing, specified:

No. 15-51061

*If the defendant is unable to pay this indebtedness at this time*, the defendant shall cooperate fully with the office of the United States Attorney, the Bureau of Prisons and/or the United States Probation Office *to make payment in full as so[o]n as possible, including during any period of incarceration.*

(emphases added). On direct appeal, this court affirmed the judgment, and the Supreme Court denied Diehl's petition for a writ of certiorari. *See United States v. Diehl*, 775 F.3d 714 (5th Cir.), *cert. denied*, 136 S. Ct. 213 (2015).

By September 2015, Diehl had only paid $446.46 toward his court-ordered monetary penalties, leaving a principal balance of $1,553.54. Upon discovering that Diehl held approximately $1,800 in his inmate trust account,[1] the Government filed an Application for Turnover Order under Texas's Turnover Statute, which "enables a judgment creditor to obtain a turnover order regarding nonexempt property in the debtor's possession or subject to the debtor's control." *United States v. Messervey*, 182 F. App'x 318, 320–21 (5th Cir. 2006) (unpublished); Tex. Civ. Prac. & Rem. Code Ann. § 31.002. In its Application, the Government asked that the district court order BOP to turn over as payment all but $1000 held in Diehl's inmate trust account. Diehl opposed the Application, which the district court granted on October 15, 2015. Diehl, who is proceeding pro se, appeals the district court's order and requests that this court remand with instructions "to refund the funds taken from [his] trust fund account."

Diehl challenges the district court's order on two grounds. First, Diehl suggests that the Federal Debt Collection Procedures Act (FDCPA) does not permit the Government's use of the Texas turnover statute to seek payment owed for outstanding monetary penalties. Second, Diehl argues that the

---

[1] The purpose of an inmate trust account (or "commissary account") "is to allow [BOP] to maintain inmates' monies while they are incarcerated." 28 C.F.R. § 506.1. BOP regulations provide that "[f]amily, friends, or other sources may deposit funds into these accounts." *Id.*

No. 15-51061

Government cannot pursue immediate payment through application of funds in his inmate trust account, because he participates in BOP's Inmate Financial Responsibility Program (IFRP) and has faithfully adhered to the payment schedule set by the program.

## DISCUSSION

For a defendant convicted of a felony, federal law requires the court to impose a special assessment of $100 for each count of conviction, 18 U.S.C. § 3013(a)(2)(A), and further authorizes the court to impose a fine of not more than $250,000, 18 U.S.C. § 3571(a).[2]  18 U.S.C. § 3572(d)(1) establishes the default rule that a defendant "sentenced to pay a fine or other monetary penalty . . . shall make such payment immediately unless . . . the court provides for payment on a date certain or in installments."  If the court elects to provide for payment in installments, the installments must consist of equal monthly payments over a period of time specified by the court, unless the court provides an alternative payment schedule.  *Id*.  Further, when a judgment permits a form of payment "other than immediate payment," the court must specify "the length of time over which scheduled payments will be made[, which] . . . shall be the shortest time in which full payment can reasonably be made." § 3572(d)(2).  In other words, payment of a fine or special assessment is due immediately, unless the judgment lists a date certain for payment or specifies a monthly installment schedule or alternative payment plan.  *Acevedo v. Franco*, 69 F.3d 535 (5th Cir. 1995) (unpublished) ("Payment of monetary fines are usually payable immediately unless otherwise directed by the district court. There is nothing in Acevedo's judgment which demonstrates any intent by the district court to alter the statutory intent of immediate payment of

---

[2] Special assessments "shall be collected in the manner that fines are collected in criminal cases."  18 U.S.C. § 3013(b).

3

Acevedo's penal fine." (citation omitted)); *see also United States v. Coluccio*, 19 F.3d 1115, 1117 (6th Cir. 1994) ("Absent language specifying [a payment schedule], the statute demands immediate payment. . . . The New York District Court's judgment order did not specify when the fine was due and did not provide for an installment schedule. Therefore we find the court below correctly determined [the defendant's] criminal fine was due immediately.").

The Attorney General is "responsible for the collection of an unpaid fine" or special assessment.  18 U.S.C. § 3612; *United States v. Pacheco-Alvarado*, 782 F.3d 213, 218 (5th Cir.), *cert. denied*, 136 S. Ct. 175 (2015).  The Government is authorized under 18 U.S.C. § 3613(a) to collect criminal fines and special assessments "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." *See also United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002).  Fines and special assessments are to be treated in the same manner as tax liens. 18 U.S.C. §§ 3013(b), 3613(c).  "18 U.S.C. § 3613(a) . . . creates a lien in favor of the United States, one which arises at the time of judgment and can be enforced against all property belonging to the person fined." *Auclair v. Sher*, 63 F.3d 407, 409 (5th Cir. 1995), *as corrected* (Oct. 13, 1995) (internal quotation marks omitted).  "This lien ar[ises] automatically when a fine [is] imposed on [a defendant] as part of [the defendant's] sentence." *United States v. Montoya-Ortiz*, 31 F. App'x 838, 838 (5th Cir. 2002) (unpublished).

"The federal law that provides the practices and procedures for the enforcement of a civil judgment is the FDCPA." *Phillips*, 303 F.3d at 551 (citing 28 U.S.C. §§ 3001–3308).  As we have previously observed, the FDCPA "was enacted 'to create a comprehensive statutory framework for the collection of debts owed to the United States government." *United States v. Elashi*, 789 F.3d 547, 552 n.3 (quoting H.R. Rep. No. 101–736 (1990)); *see also Phillips*, 303 F.3d at 551 ("The FDCPA provides the most effective means for the

No. 15-51061

Government to enforce private victim restitution orders because it provides a uniform system for prosecutors to follow rather than resorting to the non-uniform procedures provided by the states."). However, while "the Act ultimately sought to transition away from the 'patchwork' of State laws governing collection procedures," it nonetheless "did not eliminate state-law collection mechanisms as options[.]" *Elashi*, 789 F.3d at 552 n.3 (quoting H.R. Rep. No. 101–736 (1990)). The text of the FDCPA itself clarifies: "To the extent that another Federal law specifies the procedures for recovering a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter." 28 U.S.C. § 3001(b). Section 3003(b)(2) further states that the FDCPA "shall not be construed to curtail or limit the right of the United States under any Federal law or any State law . . . to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case."

Indeed, this court previously has approved the Government's use of the Texas turnover statute to collect a criminal debt—in that case, a criminal restitution order. *Messervey*, 182 F. App'x at 321. We concluded that "[t]he United States possessed a valid lien on any properties owned by [the defendant], and it employed a valid state procedural vehicle to collect the debt due." *Id.* at 320–21; *see also Coluccio*, 19 F.3d at 1116 ("While the FDCPA does not preclude officials from utilizing other procedures to collect criminal fines, the law was enacted to create a comprehensive statutory framework for the collection of debts owed to the United States government, including criminal fines." (internal citations and quotation marks omitted)); *United States v. Dimeglio*, No. A-11-CR-411-SS, 2014 WL 1761674, at *10 (W.D. Tex. May 1, 2014) ("Although turnover orders are not among the remedies expressly contained in the FDCPA, § 3003(b) provides the FDCPA shall not be construed to limit the Government's right under state law," including the Texas turnover

statute, "to collect a restitution judgment in a criminal case."). Therefore, we do not agree with Diehl that the FDCPA forecloses the ability of the Government to make use of state law collection mechanisms like the Texas turnover statute to collect unpaid criminal monetary penalties.[3]

We are also unpersuaded by Diehl's argument that his participation in IFRP and adherence to its payment schedule precludes the Government from using other available collection mechanisms to seek payment of the monetary penalties ordered in the court's judgment. The Inmate Financial Responsibility Program, established by BOP regulations, is "a work program designed to 'help [the] inmate develop a financial plan' to meet certain financial obligations, including the payment of court-imposed fines." *Pacheco-Alvarado*, 782 F.3d at 218 (quoting 28 C.F.R. § 545.11); *see also Montano-Figueroa v. Crabtree,* 162 F.3d 548, 548 (9th Cir. 1998) ("The program provides for development of a financial plan that allows inmates to pay certain enumerated obligations, including court-ordered assessments, restitution, and fines."). Inmates participating in IFRP commit a percentage of funds earned through prison employment toward payment of court-ordered monetary obligations. *Pacheco-Alvarado*, 782 F.3d at 218. Participation in IFRP is voluntary. *United States v. Boyd*, 608 F.3d 331, 334 (7th Cir. 2010). However, inmates who decline to participate or fail to comply with their agreed upon financial plan may face consequences such as limitations on work details or housing placement. *See id.*; 28 C.F.R. § 545.11.

---

[3] Although Diehl suggests that it was improper for the Government to enforce his debt using a collection mechanism outside of those specifically listed in the FDCPA, he does not suggest—nor did he before the district court—that the turnover order cannot issue on the ground that the Government failed to establish the necessary elements for turnover under Texas law. Because Diehl has not raised the issue, we do not address the question here. *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved." (quoting *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir.1988))).

No. 15-51061

Neither party has identified a decision in this circuit or others addressing the specific question of whether an inmate's participation in IFRP imposes on the judgment an installment plan that the court did not otherwise provide, such that the Government may not seek collection of the inmate's debt so long as the inmate has not missed any IFRP payments. However, since the parties submitted their briefs, the Seventh Circuit has addressed a substantially similar question, holding that the Government could seek an order directing BOP to turn over excess funds in an inmate account when the judgment specified that restitution payment was "to begin immediately." *United States v. Lemberger*, No. 16-3020, --- F. App'x ---, 2017 WL 213188, at *2 (7th Cir. 2017) (unpublished). In that case, the defendant similarly argued "that, because he was already participating in the Bureau's Inmate Financial Responsibility Program to pay his restitution, the government could not take the money from his inmate account." *Id.* The court squarely rejected the inmate's argument, noting that "the program and the government's ability to collect restitution are not mutually exclusive. A restitution order 'may be enforced by the United States in the manner provided for' in 18 U.S.C. §§ 3571–3574 and §§ 3611–3615 . . . ." *Id.*

A number of district courts have come to similar conclusions, determining that an inmate's compliance with an IFRP payment schedule does not change the fact that the Government may collect on a criminal monetary penalty immediately where the judgment does not specify a payment schedule. *See, e.g.*, *United States v. Gibbs*, No. 92-CR-30119, 2015 WL 5895461, at *1 (S.D. Ill. Oct. 8, 2015) (holding that "[the defendant's] participation in the IFRP does not preclude other means of payment as to his restitution," including BOP turning over to the Government surplus funds held in the defendant's commissary account); *United Sates v. Blondeau*, No. 09-CR-00117-H, 2011 WL 6000499, at *4 (E.D.N.C. Nov. 1, 2011) ("The fact that the Court allowed any

remaining balance owed to be paid over time through the Inmate Financial Responsibility Program and, post-release, through [monthly] installments . . . does not preclude the government from immediately collecting restitution from non-exempt assets."); *United States v. Nunez,* No. CR-07-709, 2008 WL 3862094, at *1 (D.N.J. Aug. 18, 2008) (holding that "the Government may collect on [Defendant's] fine immediately, despite Defendant's enrollment, at this Court's recommendation, in the IFRP").[4]

Although these decisions are not binding on our court, we find their reasoning persuasive. This court previously held that the Government may pursue immediate payment or adjusted enforcement of restitution so long as the judgment contains nothing to the contrary. *See United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007).[5] Further, our court and others have made clear that there is no conflict between a judgment providing for immediate payment of monetary penalties and an inmate's use of IFRP to satisfy that debt. *See Wardell v. Longley*, 532 F. App'x 580, 581 (5th Cir. 2013) (unpublished);[6] *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999) (holding

---

[4] *Cf. United States v. Shusterman*, 331 F. App'x 994, 996–97 (3d Cir. 2009) (unpublished) (upholding garnishment where the judgment provided that payment of restitution was due immediately but also recommended that the inmate participate in IFRP and provided a supervised release payment schedule in the event the inmate had not fully paid restitution at the time of his release).

[5] *See also United States v. Schwartz*, 503 F. App'x 443, 446 (6th Cir. 2012) (unpublished) (holding that when judgment provided that restitution be paid immediately, but also provided for a payment schedule, garnishment was appropriate, "[b]ecause Schwartz did not pay that portion of the restitution due . . . at the time the judgment was imposed, that amount became an unpaid debt that the government could seek to collect immediately by all available and reasonable means").

[6] *Cf. Pacheco-Alvarado*, 782 F.3d at 219 ("Appellants . . . urge that the condition scheduling payment of at least one-third of their monthly prison earnings interferes with carefully calibrated IFRP procedures. Again we disagree. The district court has the authority to impose a fine and provide for a payment schedule. Although the BOP is responsible for collection of unpaid fines, IFRP regulations expressly countenance deviations from 'ordinary' processes when called for to meet an inmate's specific obligations. We cannot conclude that the district court's order was improper.").

that when a sentencing court imposes a fine and special assessment due "in full immediately," the BOP's payment schedule pursuant to IFRP did not conflict with the sentencing court's immediate payment order); *Montano-Figueroa*, 162 F.3d at 550 (holding that, although payment was due immediately pursuant to the judgment, "[b]ecause [the defendant] was presumptively unable to pay, the prison program provided an avenue for payment").

Put simply, although inmates may use IFRP as a vehicle for satisfying unpaid special assessments and fines, a BOP-created IFRP payment schedule does not supersede the terms of the court's sentencing order. Nor does participation in the program shield otherwise collectable assets from recovery and nullify the Government's statutory authority under § 3613(a) to collect on its debt "in accordance with the practices and procedures for enforcement of civil judgment under Federal law or State law," so long as "[t]here is nothing in the criminal judgment to the contrary." *Ekong*, 518 F.3d at 286.

Diehl does not dispute that his judgment provided for immediate payment of the monetary penalties owed. Indeed, the judgment did not establish a date certain or specify installment payments for satisfaction of either the fine or the special assessment as required by 18 U.S.C. § 3572(d) to disrupt the default rule of immediate payment. *See Acevedo*, 69 F.3d at 535. The instruction for the special assessment stated so explicitly. Although perhaps inartfully expressed, we read the instruction that Diehl pay the fine "at this time" or, if he was not able to do so, "as so[o]n as possible" to have the same effect.[7] In fact, in his briefing to us, Diehl himself insists that he had

---

[7] *See Lemberger*, 2017 WL 213188, at *1–2 (finding that the phrase "payment [is] to begin immediately" as meaning, in actuality, that the defendant "pay what restitution he could at the time of the judgment, even if the court did not set a payment schedule"); *McGhee*, 166 F.3d at 886 (describing the immediate payment directive as generally interpreted to

No. 15-51061

$10,000 available at the time of the judgment and could have paid the fine in full at that time.  Thus, the Government's enforcement of the order against Diehl's property, including surplus funds held in his inmate trust account, did not exceed the terms of the original judgment.

Accordingly we AFFIRM the district court's order.

---

require "payment to the extent that the defendant can make it in good faith, beginning immediately" (citation omitted)).