# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20015

United States Court of Appeals
Fifth Circuit

**FILED**
January 30, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DAVID THOMAS HUGHES,

Defendant – Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CR-86-1

Before REAVLEY, ELROD, and WILLETT, Circuit Judges.

PER CURIAM:*

Hughes pleaded guilty to bank burglary. He was sentenced to 240 months in prison and ordered to pay $189,933.31 in restitution, with interest charged. The judgment provided that $100 was "due immediately" and provided the following payment schedule for the remaining amount:

Balance due in payments of the greater of $25 per quarter or 50% of any wages earned while in prison in accordance with the Bureau of Prisons' Inmate Financial Responsibility Program. Any balance

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20015

remaining after release from imprisonment shall be paid in equal monthly installments of $500 to commence 60 days after the release to a term of supervision.

Several years later the government discovered that Hughes had accumulated $3,464.85—largely prison wages—in his inmate trust account. Pursuant to 18 U.S.C. §§ 3613(a), 3664(n), and 3664(k), the government moved for the immediate turnover of those funds. Hughes opposed the request and filed a cross-motion to release funds, arguing, *inter alia*, that the district court (1) only required him to make payments in installments and (2) "specifically declined to order immediate payment of the entire amount." Agreeing with the government, however, the district court ordered the immediate turnover of "funds up to the amount of $ 201,493.63," with a $200 carve out for Hughes's telephone and commissary needs. Hughes timely appealed.

On appeal, Hughes argues that the district court erred in granting the government's motion because his criminal judgment required the restitution balance owed beyond $100 to be paid in quarterly installments and did not order that the balance be paid immediately. Because the government does not allege that he defaulted on his restitution payments, Hughes argues, the government lacked the authority to seek immediate payment of the full restitution amount.

The parties do not cite, and research has not revealed, any binding precedent from this court analyzing a case to Hughes's, in which the criminal judgment included a repayment schedule that began during the term of imprisonment but did not state that the full restitution amount was due immediately. Hughes, however, directs us to *United States v. Martinez*, in which the Tenth Circuit confronted a structurally similar payment schedule. 812 F.3d 1200 (10th Cir. 2015). The judgment in *Martinez* required the defendant to pay "$300 immediately," with the "balance due" in accordance

2

No. 18-20015

with an installment schedule. *Id.* at 1203–04. Although the defendant had complied with his payment plan, the government nevertheless sought garnishment of his retirement accounts. *Id.* at 1202.

The Tenth Circuit concluded that the government lacked the authority to garnish the defendant's retirement accounts because doing so would exceed the terms of the restitution order; it reasoned that:

> By statute, it is the district court—not the government—that determines how a defendant is to pay restitution. *See* [18 U.S.C.] § 3664(f)(2) ("[T]he *court* shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . . . .") (emphasis added)). Thus, the government can enforce only what the district court has ordered the defendant to pay. *See Enforce*, *Black's Law Dictionary* 645 (10th ed. 2014) (defining "enforce" primarily as "[t]o give force or effect to [a law]; to compel obedience to [a law]").

*Id.* The court rejected the government's argument it could enforce the full amount notwithstanding the installment schedule, construing § 3572(d), which provides that "[a] person sentenced to pay . . . restitution . . . shall make such payment immediately, unless, in the interest of justice, the court provides for payment . . . in installments," to imply that the full restitution amount is not due immediately when a court orders repayment pursuant to an installment-based plan. *Id.* at 1205.

We are persuaded by the Tenth Circuit's analysis. When a restitution order specifies an installment plan, unless there is language directing that the funds are also immediately due, the government cannot attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan. *See* § 3572(d)(1); *Martinez*, 812 F.3d at 1205. Turning to Hughes's order, we find no language directing that the full restitution amount was immediately due or owing, and the government does

3

not allege he was in default.[1] Like *Martinez,* Hughes's criminal judgment specifies that a small amount ($100) was due immediately, and for the remaining balance to be paid in installments. The government cannot enforce restitution payments beyond those terms unless Hughes defaults on his payments or the district court modifies the payment schedule.

The government points to *United States v. Ekong,* 518 F.3d 285 (5th Cir. 2007) (per curiam) and *United States v. Diehl,* 848 F.3d 629 (5th Cir. 2017) in support of its argument that Hughes's payment schedule is of no consequence. Both are distinguishable because the judgments in those cases contained different language. The payment schedule in *Ekong,* for example, was conditioned on whether a balance remained when the defendant began her term of supervised release.[2] In rejecting the defendant's argument that the government was barred from seeking immediate payment "because the criminal judgment specified that restitution be paid in installments," we noted that "[t]here [was] nothing in the criminal judgment to the contrary." *Ekong,* 518 F.3d at 286. From this, we infer that the full restitution amount was collectible immediately simply because the payment schedule was never triggered. *See id.*; *see Martinez,* 812 F.3d at 1207. *Ekong* is thus distinguishable.

---

[1] Although the government argues that it can seek payment beyond the installment schedule because the judgment says that "[u]nless the court has expressly ordered otherwise . . . payment of criminal monetary penalties is due during imprisonment," this is a default provision and, as explained, the court expressly ordered otherwise. *See United States v. Roush,* 452 F. Supp. 2d 676, 681 (N.D. Tex. 2006) ("The negative pregnant of that default provision is that if the court *has* expressly ordered otherwise—as this Court did by checking box D—then payment is *not* due during imprisonment.").

[2] *See Martinez,* 812 F.3d at 1207 ("If upon commencement of the term of supervised release any part of the restitution remains unpaid, the defendant shall make payments on such unpaid balance beginning 60 days after the release from custody at the rate of $500 per month until the restitution is paid in full.") (quoting Judgment in a Criminal Case at 6, *United States v. Ekong,* No. 3:04–CR–030–M (N.D. Tex. Sept. 10, 2004), ECF No. 74).

And the judgment in *Diehl* did not specify a payment schedule; rather, it provided that "[i]f the defendant is unable to pay this indebtedness at this time, the defendant shall cooperate fully with the [government] to make payment in full as so[o]n as possible, including during any period of incarceration." 848 F.3d at 630. The relevant issue there was whether the defendant's participation in the BOP's inmate financial responsibility program and adherence to its payment schedule barred the government from enforcing the full restitution amount. *Id.* at 633. Although we agreed with the decisions of other courts "determining that an inmate's compliance with an IFRP payment schedule does not change the fact that the Government may collect on a criminal monetary penalty immediately," we noted this would only be the case "where the judgment does not specify a payment schedule." *Id.* Indeed, we held the government could demand immediate payment in *Diehl* because the judgment "did not . . . specify installment payments for satisfaction of either the fine or the special assessment as required by 18 U.S.C. § 3572(d) to disrupt the default rule of immediate payment." *Id.* at 635. Importantly, we noted that the government's "enforcement of the order against Diehl's property, including surplus funds held in his inmate trust account, *did not exceed the terms of the original judgment.*" *Id.* (emphasis added). As discussed, that is not the case here, as the government's attempt to enforce the full restitution amount conflicts with the installment-based directive in Hughes's original judgment.

The government argues in the alternative that it is entitled to the funds in Hughes's trust account by virtue of § 3664(n), which provides:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

No. 18-20015

We do not think the gradual accumulation of prison wages constitutes "substantial resources" such that it fits within § 3664(n)'s ambit; rather we think this provision refers to windfalls or sudden financial injections.[3] Indeed, in *United States v. Scales*, we suggested that this provision contemplates "unanticipated resources" that become "suddenly available." 639 F. App'x 233, 239 (5th Cir. 2016) (per curiam); *see also United States v. Bratton-Bey*, 564 F. App'x 28, 29 (4th Cir. 2014) ("Additionally, a defendant's receipt of a windfall during imprisonment triggers an automatic payment requirement."); *United States v. Key*, No. 3:12-CV-3026-L, 2013 WL 2322470, at *2 (N.D. Tex. May 28, 2013) ("There is no indication that Key has received a 'windfall' or 'substantial resources' of the type in section 3664(n).").[4] Put simply, we think the examples listed in § 3664(n)—"inheritance, settlement, or other judgment"—fit the mold of "substantial resources," but that prison wages do not. As a result, the government is not entitled to the immediate turnover of Hughes's inmate trust account under § 3664(n).

The government's final argument arises under § 3664(k), which grants a district court the authority to modify a payment schedule upon receiving notification of a "material change in the defendant's economic circumstances." § 3664(k); *see United States v. Franklin*, 595 F. App'x 267, 272 (5th Cir. 2014)

---

[3] Although the government urges us to follow *United States v. Poff*, in which the Ninth Circuit concluded that veteran disability benefits deposited into an inmate's trust account constituted "substantial resources," we note the Supreme Court recently vacated and remanded the judgment in that case. 727 F. App'x 249, 251 (9th Cir. 2018), *cert. granted, judgment vacated,* 18-195, 2019 WL 113040 (U.S. Jan. 7, 2019).

[4] *See also United States v. French*, No. 3:09-CV-1657-BF, 2010 WL 11618076, at *1 (N.D. Tex. Aug. 19, 2010) ("Similarly, a windfall during incarceration triggers an automatic obligation to pay restitution."); *Roush*, 452 F. Supp. 2d at 679 (N.D. Tex. 2006) ("Moreover, a defendant's receipt of a windfall during imprisonment triggers an automatic payment requirement."). We also note the Supreme Court recently favored a narrower reading of the MVRA. *See Lagos v. United States*, 138 S. Ct. 1684, 1689 (2018) ("To interpret the statute broadly is to invite controversy on those and other matters; our narrower construction avoids it.").

(per curiam) ("A district court may adjust a restitution-payment schedule when there has been a 'material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.'"). Although it is dubious whether the gradual accumulation of prison wages constitutes a "material change in the defendant's economic circumstances," we note that the district court's turnover order was not based on § 3664(k), and we find no language demonstrating that it intended to adjust or modify the payment schedule contained in Hughes's original judgment.

The district court's order dated November 27, 2017, is VACATED.