RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0268p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 21-3518

ADAM CARSON,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:17-cr-00008-1—Donald C. Nugent, District Judge.

Argued: November 29, 2022

Decided and Filed: December 16, 2022

Before: WHITE, THAPAR, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Rema A. Ina, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Rema A. Ina, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. Adam Carson, Lewisburg, Pennsylvania, pro se.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge. When the district court took all but $300 from Adam Carson's inmate trust account to pay his court-ordered restitution, it made no findings and cited no authorities. Because the law requires more, we vacate and remand for further findings.

I.

In 2018, a federal jury convicted Carson of bank robbery and witness tampering. 18 U.S.C. §§ 2113(a), 1512(b)(1).  The district court then sentenced Carson to 240 months' imprisonment and 3 years' supervised release.  It also ordered Carson to "immediately" begin paying $5,590 in restitution to the victim bank in installments of 25% of his gross monthly income through the Inmate Financial Responsibility Program ("IFRP").  R. 107, Pg. ID 1465. We affirmed this sentence. *See United States v. Carson*, 796 F. App'x 238, 251 (6th Cir. 2019).

While incarcerated, Carson periodically receives prison wages and cash deposits from his family in his inmate trust account, which is maintained by the Bureau of Prisons ("BOP").  After discovering that the BOP "maintain[ed] in its possession, custody, or control approximately $4,037.89 in funds belonging to [Carson]," the government asked the district court to order the BOP to turn over all but $300 of those funds and apply them to Carson's restitution obligation. R. 160, Pg. ID 1689.  In support of its request, the government cited 18 U.S.C. § 3664(n), which requires a defendant who "receives substantial resources from any source, including inheritance, settlement, or other judgment, . . . to apply the value of such resources to any restitution or fine still owed."

The very next day, and without giving Carson an opportunity to be heard, the district court granted the motion, turning over "the full amount of the non-exempt funds" to the government, less $300 for any "miscellaneous expenses."  R. 161, Pg. ID 1696.  Although the district court did not define "non-exempt," it presumably referred to categories exempted in 18 U.S.C. § 3613(a)(1).[1]  The order contained no findings and cited no authorities.

Carson appealed.  Because this case concerns several matters of first impression, we appointed counsel to represent Carson, who then refined his arguments in supplemental briefing.

---

[1]18 U.S.C. § 3613(a)(1) prevents the federal government from applying the following categories of property toward a defendant's restitution obligation: (1) "wearing apparel and school books"; (2) "fuel, provisions, furniture, and personal effects"; (3) "books and tools of a trade, business, or profession"; (4) "unemployment benefits"; (5) "undelivered mail"; (6) "certain annuity and pension payments"; (7) "workmen's compensation"; (8) "judgments for support of minor children"; (10) "certain service-connected disability payments"; and (12) "assistance under [the] Job Training Partnership Act."  18 U.S.C. § 3613(a)(1) (exempting funds defined under section 6334(a)(1)–(8), (10), (12) of the Internal Revenue Code of 1986, codified at 26 U.S.C. § 6334).

Through counsel, Carson now argues that the district court violated the terms of his judgment and repayment agreement. He also contends that he never received process due under the Constitution and the three statutes the government now relies on for the garnishment: 18 U.S.C. §§ 3613, 3664(k), and 3664(n).

At oral argument, the government suggested for the first time that a large portion of the approximately $4,000 deposited in Carson's account consisted of federal stimulus payments issued during the COVID-19 pandemic. According to the government, "once the United States realized that [Carson] received th[is] money," it was entitled "to get it back." Oral Argument 42:59–43:06. So it moved to garnish the stimulus checks received by Carson and thousands of inmates like him.

Because the district court failed to make the minimal findings necessary to determine whether Carson's funds fell within these statutes, we vacate and remand.

II.

At the outset, Carson argues that the district court lacked authority to garnish his funds because he complied with his judgment and repayment agreement. We disagree.

Regardless of Carson's initial payment schedule, the sentencing court retains the authority to modify that schedule under the statutes at issue here. *See United States v. Phillips*, 9 F.4th 382, 384–85, 388 (6th Cir. 2021). Indeed, section 3664(n) provides for automatic modification, provided that the necessary findings are made. If Carson receives any windfall, that amount would automatically apply toward his restitution obligation. *See United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019). And section 3664(k) permits the court to "adjust the payment schedule" or "require immediate payment in full" after receiving notice of any "material change" to Carson's economic circumstances.

Carson relies on an unpublished case to argue that the district court lacked such authority. *See United States v. Badger*, 581 F. App'x 541 (6th Cir. 2014). In *Badger*, the district court ordered the BOP "to seize half of the funds in [defendant]'s prison account and half of all future deposits" after concluding that the defendant wouldn't be deterred by more prison time because

he was already serving a life sentence. *Id.* at 542. On appeal, we vacated the court's order because the statutes at issue in that case only permitted garnishment when the defendant defaults on his payments. *Id.* at 543. But that case is inapposite. First, section 3664(n)'s windfall provision wasn't at issue in *Badger*, as it is here. Second, unlike Carson, the defendant in *Badger* wasn't subject to a restitution-payment plan. Instead, he was fined. Finally, the government in *Badger* conceded that the garnishment was improper, but no such concession has been made here.

For these reasons, Carson's mere compliance with his judgment and payment agreement does not bar garnishment.

## III.

We next conclude that the district court failed to make sufficient findings under all three statutes cited by the government.

## A.

Below, the government argued that it was entitled to garnish Carson's funds under 18 U.S.C. § 3664(n). That section requires a defendant who "receives substantial resources from any source" to apply those resources toward his outstanding restitution obligation. *Id.* But before the district court may grant such relief under section 3664(n), it "must first determine the source of the funds." *United States v. Evans*, 48 F.4th 888, 891 (8th Cir. 2022) (cleaned up). Then the court must determine if the funds are sufficiently "substantial" to warrant garnishment. *See id.* at 892. But the district court made neither finding.

First, the district court didn't determine the source of Carson's funds. This inquiry is necessary because section 3664(n) covers payments from outside sources, *not* gradually accumulated prison wages.[2] To see why, consider the text. Section 3664(n) applies not just to any funds, but to "*substantial* resources." 18 U.S.C. § 3664(n) (emphasis added); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012)

---

[2]We thus agree with the Fifth, Eighth, and Ninth Circuits, which are the only courts that have addressed this issue. *See, e.g.*, *Hughes*, 914 F.3d at 951; *United States v. Kidd*, 23 F.4th 781, 787 (8th Cir. 2022); *United States v. Poff*, 781 F. App'x 593, 594–95 (9th Cir. 2019).

(discussing the canon of *noscitur a sociis*, which allows a word to be defined by its "associates"). And prison wages aren't substantial.

Rather, a resource is "substantial" if it is of "ample or considerable amount or size," "weighty," or of "real significance." *E.g.*, Substantial, *Oxford English Dictionary Online* (3d ed. 2022). Corpus linguistics evidence from the 1990s—when the "substantial resource" language was added to section 3664(n)—confirms this understanding.[3] The Corpus of Contemporary American English shows that the general public at that time most often associated "substantial" with "big," "large," "important," "significant," and "extensive." Brigham Young Univ., *Corpus of Contemporary American English*, http://corpus.byu.edu/coca. But prison wages are none of those things. Indeed, inmates accumulate 12¢ to 40¢ per hour for institutional work assignments,[4] and 23¢ to $1.15 for UNICOR projects.[5] Simply put, gradual payments of such small amounts are not "substantial."

Moreover, Carson's prison wages have already been accounted for. Under the terms of Carson's judgment and payment plan, the government agreed to garnish no more than 25% of his monthly wages. To garnish more than 25% of Carson's wages, the government would have to modify Carson's payment plan. But section 3664(n) doesn't authorize the court to make such modifications. As a result, prison wages aren't subject to section 3664(n). In practice, this means that if all $4,000 in Carson's account came from wages that he saved after complying with his payment plan, the government wouldn't be allowed to garnish anything under section 3664(n). But if Carson received $3,000 in cash payments from an outside source and $1,000 in prison wages, then the government might be entitled to the $3,000.

---

[3]*See Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 439–40 (6th Cir. 2019) (Thapar, J., concurring in part and in the judgment) (explaining the value of corpus linguistics in interpreting legal texts); *State v. Rasabout*, 356 P.3d 1258, 1283 (Utah 2015) (Lee, A.C.J., concurring in part and concurring in the judgment) (noting that jurists may use corpus evidence and other linguistic sources not appearing in the parties' briefs if the underlying question of statutory interpretation is squarely presented to the court).

[4]Fed. Bureau of Prisons, *Custody & Care: Work Programs*, https://www.bop.gov/inmates/custody_and_care/work_programs.jsp (last visited Dec. 2, 2022).

[5]Fed. Bureau of Prisons, *UNICOR: Program Details*, https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp (last visited Dec. 2, 2022).

Thus, to ensure that no prison wages are garnished under section 3664(n), district courts must make findings. And here, the court didn't determine whether any of Carson's $4,000 came from his prison wages prior to garnishment. To be sure, the government asserted at oral argument that most of this money came from stimulus payments. But it didn't provide such evidence below. Therefore, the district court's section 3664(n) order wasn't valid.

Second, after identifying the source of Carson's funds, the court must determine whether they are sufficiently "substantial" to warrant garnishment. *See Evans*, 48 F.4th at 892. Of course, "substantial" is a relative term that requires courts to consider the economic circumstances of each inmate. As a result, "what constitutes substantial resources is an issue that requires careful, case-specific analysis." *Evans*, 48 F.4th at 892 (citation omitted). But for current purposes, we agree with the Ninth Circuit: to a prisoner receiving no more than a hundred dollars a month in wages, a cash deposit of $2,663.05 from outside sources would be "substantial." *See Poff*, 781 F. App'x at 595. It's one thing to give an inmate a few dollars to spend at the commissary, but quite another to deposit a few thousand dollars in his account.

To be sure, before he was appointed counsel, Carson conceded that some of the money seized by the government came from his family. And during oral argument, the government asserted that Carson received stimulus checks. If the record clearly showed that all of the garnished funds came from these sources and were sufficiently "substantial," the district court could've permissibly ordered garnishment under section 3664(n). *See United States v. White*, 745 F. App'x 646, 648 (7th Cir. 2018); *United States v. Robinson*, 467 F. App'x 100, 102 (3d Cir. 2012). But the record contains no such findings. Rather, the district court emptied Carson's entire account, less $300 for any "miscellaneous expenses," without determining whether Carson's prison wages would be garnished by its order. R. 161, Pg. ID 1696.

In sum, because section 3664(n) covers "substantial resources" but not gradually accumulated prison wages, additional findings are needed before Carson's funds can be seized under this section.

B.

On appeal, the government argues for the first time that 18 U.S.C. § 3664(k) justifies an adjustment to the defendant's restitution order. In particular, the government claims that the deposited stimulus checks qualify as a "material change in the defendant's economic circumstances." *Id.* And once there is a material change, the district court may "adjust the payment schedule" or "require immediate payment in full" of a defendant's restitution obligation. *Id.* True enough, but the district court did neither (perhaps because the government didn't cite this section below).

Instead, the district court "simply ordered the Bureau of Prisons to release all funds from [Carson]'s inmate trust account," less $300. It issued a garnishment order; it didn't amend Carson's payment plan. Such an order, however, doesn't qualify as an "adjust[ment] to the payment schedule" or as an order requiring "immediate payment in full." *See, e.g., United States v. Robinson*, 44 F.4th 758, 761 (8th Cir. 2022) (noting that "adjustments" alter the plan "set forth in the judgment").

Even if the district court had adjusted the schedule or required immediate payment in full, section 3664(k) only allows such modifications "as the interests of justice require." But the district court never made any interests-of-justice findings. Without such a finding, we can't have "meaningful appellate review." *United States v. Jones*, 980 F.3d 1098, 1116 (6th Cir. 2020). Thus, section 3664(k) does not justify the district court's action.[6]

C.

Finally, the order lacked the findings required by 18 U.S.C. § 3613. Under that provision, the government may treat a defendant's restitution obligation as a lien in its favor and acquire the funds in an inmate's trust account. *See id.*; *United States v. Sayyed*, 862 F.3d 615,

---

[6]Section 3664(k) also states that "[t]he Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances." 18 U.S.C. § 3664(k). Though the record doesn't indicate whether the Attorney General made any such certifications, this fact doesn't help Carson's case. To be sure, this certification requirement is necessary when the defendant invokes section 3664(k) to receive "a deferment of restitution." *United States v. Hill*, 205 F.3d 1342 (Table), *1 (6th Cir. 1999). But this provision is meant to protect the victim, not the person ordered to make restitution. *See United States v. Rand*, 924 F.3d 140, 143–44 (5th Cir. 2019).

618–19 (7th Cir. 2017).  However, this authority has two limits.  First, the government's lien is only valid "[u]pon filing a notice of lien in the manner in which a notice of tax lien would be filed . . . [under] the Internal Revenue Code of 1986."  18 U.S.C. § 3613(d).  Second, section 3613 liens are subject to the Consumer Credit Protection Act, which limits what the government may garnish.  *See id.* § 3613(a)(3); 15 U.S.C. §§ 1672, 1673; *Kidd*, 23 F.4th at 784 n.2.

Nothing here indicates whether the government filed a notice of lien in the manner prescribed by the Internal Revenue Code.  And because the district court ordered the BOP to turn over Carson's funds without making any findings, it's unclear whether the government garnished Carson's prison wages in violation of the Consumer Credit Protection Act.

\*          \*          \*

Because the district court didn't indicate what statutory authority it was relying on or make the required findings, we need not address what more—if anything—the constitutional guarantee of due process requires.  We accordingly vacate the order and remand for further findings.