**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-1034 |
| *Plaintiff - Appellee*, | D.C. No. 2:04-cr-00173-MKD-1 |
| v. | |
| RONALD BRUCE MYERS, AKA Rick LNU, AKA Rick Curtis, | ORDER AND AMENDED OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted December 3, 2024
Seattle, Washington

Filed May 6, 2025
Amended March 27, 2026

Before: Danny J. Boggs, M. Margaret McKeown, and Ryan
D. Nelson, Circuit Judges.[*]

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Order;
Opinion by Judge R. Nelson;
Dissent by Judge McKeown;
Concurrence in the Order by Judge R. Nelson;
Dissent from the Order by Judge Wardlaw;
Statement to the Order by Judge McKeown

## SUMMARY[**]

### Restitution

The panel filed (1) an order denying a petition for panel rehearing and rehearing en banc, (2) an amended opinion affirming the district court's order granting the government's motion to turn over certain funds in Ronald Myers's inmate trust account and apply them to Myers's restitution obligation, and (3) an unchanged dissent.

In the amended opinion, the panel addressed the question whether a provision of the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3664(n), applies to the gradual accumulation of cash deposits from family and friends in an inmate's trust account. Section 3664(n) requires an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment" to put such resources toward unpaid restitution. The government disclaimed any efforts to target Myers's prison wages.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Rejecting Myers's argument that § 3664(n) covers only "one-time, lump-sum windfalls and sudden financial injections" from a single source, the panel majority held that § 3664(n) applies not just to one-time financial windfalls, but also to substantial aggregated sums from multiple sources—like family and friends—that gradually accrue in an inmate's trust account. Thus, the district court properly invoked § 3664(n) to turn over deposits from family and friends that accrued to form a substantial sum in Myers's inmate trust account.

The panel majority rejected Myers's argument that the district court's turnover order contravenes the judgment's restitution provisions.

The panel majority held that the district court did not abuse its discretion in declining to hold an evidentiary hearing on the composition of Myers's trust account—*i.e.*, to determine which of the funds could be "specifically identified" as prison wages.

Dissenting from the panel majority's decision, Judge McKeown wrote that § 3664(n) applies only to resources that are substantial at the time of receipt. Because the district court assessed whether Myers's trust account was a substantial amount in total, rather than analyzing individual transactions for substantiality, she would vacate the order authorizing payment and remand for the district court to conduct a transaction-by-transaction analysis.

Judge R. Nelson concurred in the denial of rehearing en banc. He wrote that the panel majority's interpretation of § 3664(n) is the best textual reading, and this court properly denied rehearing en banc. First, the government reasonably secured just $1,200 in restitution (or about four percent of the inmate's funds received in the prior decade during

incarceration) for victims consistent with the MVRA. Second, the panel majority created no new circuit split. On the contrary, the dissent's view would create a circuit split by adopting an interpretation of § 3664(n) that no other court has adopted and the parties did not argue.

Judge Wardlaw, joined by Judges Gould, Koh, and Mendoza, dissented from the denial of rehearing en banc. Judge Wardlaw wrote that the panel majority muddled separate statutory provisions to sweep small sums deposited over time by family and friends (and perhaps even prison wages) that have become "substantial" into the MVRA's automatic turnover provision, 18 U.S.C. § 3664(n). Congress, however, made clear that material changes in a defendant's financial circumstances are governed by 18 U.S.C. § 3664(k). The panel decision is incorrect, creates a circuit split, and deprives inmates of the monies saved in their trust fund accounts to pay for necessities, including food and hygiene, to afford to communicate with friends and family, and to save for release and reentry. Moreover, it applies to inmates held in federal institutions in the Ninth Circuit only—and not across the federal system—interfering with the BOP's carefully constructed Inmate Financial Responsibility Program.

Judge McKeown, joined by Judges W. Fletcher and Paez, wrote in agreement with Judge Wardlaw's dissent from the denial of rehearing en banc. Judge McKeown wrote that the majority erroneously held that § 3664(n) extends not just to resources that are substantial at the time of receipt, but to *any* "gradual accumulation of periodic deposits" that becomes substantial at some later time. A principled reading of the statute does not support that result.

# COUNSEL

Brian M. Donovan (argued), Timothy M. Durkin, and Ian L. Garriques, Assistant United States Attorneys; Vanessa R. Waldref and S. Peter Serrano, United States Attorneys; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Plaintiff-Appellee.

W. Miles Pope (argued), Goddard Pope PLLC, Boise, Idaho, for Defendant-Appellant.

Caroline Cohn, National Consumer Law Center, Boston, Massachusetts; Jessie Agatstein and Vincent Brunkow, Federal Defenders of San Diego Inc., San Diego, California; for Amici Curiae National Consumer Law Center and Federal Defenders of San Diego Inc., *et al.*.

John B. Williams III, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; Aaron P. Brecher, Orrick Herrington & Sutcliffe LLP, Seattle, Washington; Avery Cartwright, Orrick Herrington & Sutcliffe LLP, Los Angeles, California; Donald M. Falk, Schaerr Jaffe LLP, San Francisco, California; for Amicus Curiae the National Association of Criminal Defense Lawyers.

## ORDER

The opinion filed on May 6, 2025 (Dkt. No. 52) and reported at 136 F.4th 917 is hereby amended. The dissent is unchanged. The amended opinion will be filed concurrently with this order.

Judge R. Nelson and Judge Boggs voted to deny the petition for panel rehearing. Judge McKeown voted to grant the petition for panel rehearing. Judge R. Nelson voted to deny the petition for rehearing en banc and Judge Boggs so recommended. Judge McKeown recommended granting the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 40.

The petition for panel rehearing and rehearing en banc (Dkt. No. 55) is **DENIED**, and no further petitions for rehearing will be entertained in this case.

# OPINION

R. NELSON, Circuit Judge:

The Mandatory Victims Restitution Act requires an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment" to put such resources toward unpaid restitution. 18 U.S.C. § 3664(n). The question here is whether this provision applies to the gradual accumulation of cash deposits from family and friends in an inmate's trust account. We hold that it does. Because § 3664(n) authorizes a district court to turn over periodic deposits that substantially accrue in an inmate's account, we affirm.

I

In 2005, Ronald Myers pleaded guilty to possessing an implement for counterfeiting state securities and transporting a stolen motor vehicle across state lines. *See* 18 U.S.C. §§ 513(b), 2312. The district court sentenced Myers to 60 months' imprisonment and 3 years' supervised release. It also ordered him to "immediately" begin paying $40,406 in restitution, with payments "[not] less than 25% of [his] monthly gross earnings" while incarcerated.[1]

Myers completed his 60-month prison sentence in 2010. But he was reincarcerated on other charges in 2013 and has been in federal custody since. Because Myers still owes restitution from the 2005 conviction, the conditions in that restitution order remain in effect. *See United States v.*

---

[1] Restitution compensates victims for losses "directly resulting from a defendant's offense." *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996).

*Hankins*, 858 F.3d 1273, 1278 (9th Cir. 2017) (quoting 18 U.S.C. § 3613(b)).

Myers, like other federal inmates, has a trust account maintained by the Federal Bureau of Prisons (BOP). *See* 28 C.F.R. §§ 506.1, 506.2. Since 2013, over $30,500 has been deposited in Myers's account. Most deposits ($27,872) were from family and friends. The rest ($2,747) were prison wages. Myers claims he saved some of the money, but records show he spent most of it. Over nine years, Myers donated $1,580 to charity, sent $1,334 to other individuals, and spent about $128 on subscriptions. He spent the remainder at the prison commissary. As of late 2022, Myers's account contained $1,622.

Myers still owes his victims over $35,000 in restitution. So when the government discovered the activity on Myers's trust account, it asked the district court to direct BOP to turn over most of the remaining funds and apply them to Myers's obligation. The government disclaimed any efforts to target Myers's prison wages. But as to the accumulated deposits from family and friends, the government invoked the Mandatory Victims Restitution Act (MVRA), which requires an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment, . . . to apply the value of such resources to any restitution or fine still owed." Pub. L. No. 104-132, § 206(a), 110 Stat. 1227, 1235–36 (1996) (codified at 18 U.S.C. § 3664(n)).

The district court granted the turnover motion. *United States v. Myers*, No. 2:04-cr-173, 2023 WL 7017707, at *4 (E.D. Wash. May 10, 2023). It first rejected Myers's request for an evidentiary hearing, concluding that the government had presented sufficient evidence of the trust account's

composition. *Id.* at *1. The district court then addressed its authority to turn over Myers's funds under § 3664(n). It noted that the statute covers more than just lump-sum payments from a single source. Instead, as other courts have recognized, "substantial resources" includes "substantial aggregated sums." *Id.* at *2. And while the district court did not understand § 3664(n) to cover the gradual accumulation of prison wages, it claimed authority to turn over substantial aggregated deposits from "an individual, including a friend or family member." *Id.*

The final question, then, was whether the balance of Myers's account—sans prison wages—was a "substantial" resource. In conducting that analysis, the district court assumed that all of Myers's prison wages from 2022 remained in the account and were not spent at the commissary or sent to other individuals. *Id.* at *3. It then subtracted those wages ($388.80) from the total account balance ($1,622.53) and concluded that $1,233.73 was subject to turnover. *Id.* Analogizing to other § 3664(n) cases, the district court concluded that $1,233.73 is "reasonably found to be a substantial resource." *Id.* at *2. The district court thus directed BOP to turn over that amount as payment toward Myers's unpaid restitution. Myers timely appealed.

## II

We have jurisdiction under 28 U.S.C. § 1291. We review de novo decisions involving the interpretation of federal restitution laws. *United States v. Swenson*, 971 F.3d 977, 980–81 (9th Cir. 2020). The denial of an evidentiary hearing is reviewed for abuse of discretion. *United States v. Cook*, 808 F.3d 1195, 1201 (9th Cir. 2015) (citing *United States v. Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007)).

### III

Myers raises three arguments on appeal. First, he maintains that § 3664(n) covers only "one-time, lump-sum windfalls and sudden financial injections" from a single source—not the accumulation of small, periodic deposits from family and friends. Second, Myers asserts that the district court's turnover order unlawfully superseded the judgment's restitution provisions. Third, he claims that the district court abused its discretion in declining to hold an evidentiary hearing on the composition of his trust account. Each argument falls short.

### A

We begin with Myers's challenge under § 3664(n). As always, we start with the text. *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). Section 3664(n) provides that if an inmate "receives substantial resources from any source, including inheritance, settlement, or other judgment," he "shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n). In interpreting this provision, we face two related questions. Is § 3664(n) restricted to payments from a single source? And does the statute's reference to "inheritance, settlement, or other judgment" limit its application to sudden financial windfalls? Addressing each question in turn, we hold that § 3664(n) applies not just to one-time financial windfalls, but also to substantial aggregated sums from multiple sources—like family and friends—that gradually accrue in an inmate's trust account.

### 1

Start with whether § 3664(n) is limited to payments from a single source. Myers points to the phrase "any source,"

arguing that Congress's use of the singular form suggests that § 3664(n) only authorizes turnover of payments from a single source, not accumulated deposits from different individuals. The problem for Myers is that we ordinarily read singular forms in statutes as plural. In interpreting the U.S. Code, the Dictionary Act tells us to assume "words importing the singular include and apply to several persons, parties, or things," unless "context indicates otherwise." 1 U.S.C. § 1; *accord Niz-Chavez v. Garland*, 593 U.S. 155, 164–65 (2021). This long-standing rule of interpretation— the singular includes the plural—"is simply a matter of common sense and everyday linguistic experience." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 130 (2012); *see Schott v. Comm'r of Internal Revenue*, 319 F.3d 1203, 1206 (9th Cir. 2003). Against this backdrop, Myers puts too much stock in the singular "source." "[A]ny source" includes payments from multiple, independent sources that, when combined, amount to "substantial resources."

The Sixth Circuit reached the same conclusion. In *United States v. Carson*, the defendant conceded that some of the money in his inmate trust account came from his family. 55 F.4th 1053, 1058 (6th Cir. 2022). And the government asserted that the defendant's account also included COVID-19 stimulus checks. *Id.* The Sixth Circuit explained that "[i]f the record clearly showed that all of the garnished funds came from these sources and were sufficiently 'substantial,' the district court could've permissibly ordered garnishment under § 3664(n)." *Id.* (citing *United States v. White*, 745 F. App'x 646, 648 (7th Cir. 2018); *United States v. Robinson*, 467 F. App'x 100, 102 (3d Cir. 2012)). In other words, *Carson* recognized that

§ 3664(n) authorizes turnover of substantial funds from multiple sources.

*United States v. Kidd* is similar, despite Myers's argument that the Eighth Circuit adopted a single-source reading of § 3664(n).  23 F.4th 781 (8th Cir. 2022).  In declining to authorize turnover of an inmate's prison wages, the Eighth Circuit noted that Congress drafted § 3664(n) to "focus[] on single transactions from outside *sources*."  *Id.* at 787 (emphasis added).  The plural form shows that the panel understood § 3664(n) to cover payments from more than one outside source.  Indeed, in remanding the case to the district court, the Eighth Circuit explained that "the $5,500 at issue could include the receipt of 'substantial resources' from outside *sources* that would be subject to § 3664(n)."  *Id.* (emphasis added).  *Kidd* does not suggest that § 3664(n) applies only to payments from a single source.

The dissent takes issue with any interpretation of § 3664(n) that authorizes turnover of substantial aggregated sums from multiple sources.  Dissent at 27–28.  It focuses on the word "receives," arguing that the statute applies only to resources that are substantial at the time of receipt.  *Id.*  That is not the best reading of the statute.  For starters, the dissent's interpretation runs up against "any source."  The Dictionary Act's default rule is clear: read the singular "source" to include the plural.  *See supra*, at 11.  That means § 3664(n) applies to any inmate who "receives substantial resources" from multiple sources during his incarceration.

As the dissent recognizes, the Dictionary Act does not govern every case.  Dissent at 28 (citing *Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543, 554 (9th Cir. 2024)).  The Act's default rules do not apply if "the context indicates otherwise."  1 U.S.C. § 1.  That exception kicks in, however,

"only when its use would produce genuine discord and is necessary to 'excus[e] the court from forcing a square peg into a round hole.'" *United States v. Jackson*, 480 F.3d 1014, 1019–20 (9th Cir. 2007) (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 200 (1993)). Far more than "potential ambiguity" is required before we can depart from the Dictionary Act's instructions. Dissent at 28.

The dissent makes the same mistake with respect to timing. Because § 3664(n) uses the present tense "receives," the dissent infers that resources must be substantial at the moment they are received. Dissent at 28–29. In other words, on the dissent's view, resources cannot be combined to *become* substantial and still fall within the statute's ambit. Again, the Dictionary Act tells us otherwise. "[W]ords used in the present tense include the future as well as the present." 1 U.S.C. § 1; *see Carr v. United States*, 560 U.S. 438, 449 (2010) (a statute's "undeviating use of the present tense" can be a "striking indic[ator]" of its "prospective orientation" (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987))). Section 3664(n) therefore imposes a turnover obligation on any inmate who "receives" substantial resources—now or in the future. While resources from multiple sources may not be substantial at the time of receipt, they can reach that threshold if they accumulate over time.

In sum, § 3664(n) authorizes a district court to turn over "substantial resources from any source" that are the combination of payments from multiple, independent sources, including deposits from family and friends. While Congress used the singular "source," it's a truism of statutory interpretation that "singulars normally include plurals." *Schott*, 319 F.3d at 1206. So "any source" includes deposits in an inmate's trust account from plural sources.

And once the combined deposits form a "substantial resource[]," they are subject to turnover under § 3664(n).

2

Myers also argues that "any source" must be known by the company it keeps: "inheritance, settlement, or other judgment." On that view, § 3664(n) only covers the kinds of income listed in the statute—windfalls or sudden financial injections. Because the cash deposits from family and friends were not "one-time, lump-sum" financial windfalls akin to an inheritance or settlement, Myers says they fall outside the ambit of § 3664(n).

Myers's argument runs headfirst into the plain meaning of "any." "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)) (cleaned up). The Supreme Court has repeatedly endorsed this broad understanding. *See Small v. United States*, 544 U.S. 385, 396–97 (2005) (Thomas, J., dissenting) (listing examples).[2] And we have similarly explained that the "word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1153 (9th Cir. 2010) (quoting *Fleck v. KDI Sylvan Pools Inc.*, 981 F.2d 107, 115 (3d Cir. 1992)); *see United States v. Lillard*, 935 F.3d 827, 837 (9th Cir. 2019) (Bennett, J., dissenting) ("The broad

---

[2] The dissent overstates our reliance on *Small*. Dissent at 31. *Small* lists examples that reinforce the Supreme Court's broad reading of "any." This supports our holding with which the dissent agrees—that "any source" is not limited to windfalls or other sudden financial injections. *Id.* at 27, 29, 30. As the dissent notes, Justice Thomas's dissent in *Small* addresses "scope, not quantity." *Id.* at 31.

language used throughout [§ 3664(n)] reinforces that Congress intended this subsection to apply broadly . . . ."). "[S]ubstantial resources from any source" means what it says: § 3664(n) is not limited to windfalls or sudden financial injections.

Of course, the phrase "any source," like all statutory language, must be read in context. *E.g.*, *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). And that context is critical when interpreting § 3664(n). After all, the statute does not reference "any source" alone. It lists examples—"including inheritance, settlement, or other judgment"—often associated with sudden financial windfalls.

That non-exhaustive list, however, does not cabin § 3664(n)'s otherwise broad scope. The statute uses a far-reaching phrase—"any source"—followed by another expansive word—"including." *See Bloate v. United States*, 559 U.S. 196, 207 (2010) ("[I]ncluding" is "an expansive or illustrative term"). It then lists three examples— inheritances, settlements, and other judgments—that Congress wanted to make clear are covered by the statute. *See* Scalia & Garner, *supra*, at 204 ("Following the general term with specifics can serve the function of making doubly sure that the broad (and intended-to-be-broad) general term is taken to include the specifics."). We have suggested as much. In *United States v. Rich*, we singled out the phrase "including inheritance, settlement, or other judgment" in explaining that "all of a convicted defendant's income and assets may be subject to restitution." 603 F.3d 722, 726 (9th Cir. 2010) (quoting 18 U.S.C. § 3664(n)); *see also United States v. Kaczynski*, 416 F.3d 971, 975 & n.7 (9th Cir. 2005) (suggesting that § 3664(n) authorizes turnover of substantial funds an inmate receives for "ordinary property" made more valuable because of his notoriety). *Rich* shows that the three

examples in § 3664(n) illustrate the statute's breadth, not its limitations. Reading them to constrain § 3664(n) would conflict with Congress's use of the expansive words "any" and "including."

Myers says this construction only makes sense if there is reason to specify that inheritances, settlements, and other judgments are subject to turnover under § 3664(n). Congress may have employed a belt-and-suspenders approach for several reasons. For one, the U.S. Code sometimes distinguishes inheritances, settlements, and judgments from regular deposits. A provision of the tax code, revised the same year as § 3664(n), expressly excludes many settlements and judgments from gross income. *See* Pub. L. No. 104-188, § 1605(a)–(c), 110 Stat. 1755, 1838 (1996) (codified at 26 U.S.C. § 104(a)(2)). Another provision excludes from gross income the value of property acquired by inheritance. 26 U.S.C. § 102(a). That § 3664(n) singles out the same sources for inclusion suggests that Congress envisioned a different approach with the MVRA.

Plus, § 3664(n) was enacted when Congress was particularly concerned about prisoner lawsuits. The Prison Litigation Reform Act (PLRA)—passed by the same Congress as the MVRA—instituted several reforms to "reduce the quantity" of prisoner suits. *Jones v. Bock*, 549 U.S. 199, 203–04 (2007) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). It would make sense for Congress to warn that even if a prisoner can successfully navigate the PLRA's procedural and substantive bars, any ensuing monetary judgment still faces turnover under § 3664(n). Thus, the "more logical interpretation of § 3664(n)" is that Congress singled out inheritances, settlements, and other judgments to eliminate any doubt about their inclusion. *Kidd*, 23 F.4th at 786–87.

Myers responds that Congress had no reason to make doubly sure that § 3664(n) covers inheritances, settlements, and other judgments. He admits that "substantial resources from any source" is so broad that "no reasonable legislator" could think that it excludes inheritances, settlements, or other judgments. So unless the statute is limited to sudden financial windfalls, those specific sources of income are allegedly redundant. But Congress may use a "belt and suspenders approach" to dispel any doubt about a statute's scope. *See Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020) ("[S]ometimes the better overall reading of the statute contains some redundancy." (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019))).

Myers's reading of § 3664(n) also relies on assumptions about inheritances, settlements, and other judgments that do not always bear out in practice. An inheritance or settlement need not be a financial windfall. Plenty of inheritances, settlements, and other judgments are for nominal amounts. Nor is an inheritance or settlement necessarily a "one-time, lump-sum" payment. Those sources of income are regularly distributed in periodic installments over time. So, contrary to Myers's view, Congress's reference to "inheritance, settlement, or other judgment" does not necessarily mean that "any source" is limited to windfalls or sudden financial injections.

Myers finds support in a handful of cases limiting § 3664(n) to sudden financial windfalls, however defined. Take the Fifth Circuit's decision in *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019). With little analysis, the *Hughes* panel simply stated: "[W]e think [§ 3664(n)] refers to windfalls or sudden financial injections." 914 F.3d at 951. And other courts have signaled agreement with *Hughes* without doing their own statutory interpretation. *See, e.g.*,

*United States v. Saemisch*, 70 F.4th 1, 6 (1st Cir. 2023); *Carson*, 55 F.4th at 1056.

Those cases are not persuasive. They largely mimic *Hughes*, which focused on the separate question of whether § 3664(n) applies to the gradual accumulation of prison wages.[3] More importantly, none squarely addresses the question here: Does § 3664(n) cover the gradual accumulation of periodic deposits from family and friends in an inmate's trust account?

The better-reasoned cases recognize what § 3664(n)'s text makes clear: the statute is not limited to windfalls or sudden financial injections. The Eighth Circuit acknowledged the breadth of "any source" in rejecting the argument "that § 3664(n) refers *only* to windfalls or sudden financial injections." *Kidd*, 23 F.4th at 786–87 (internal quotation marks omitted). And the Tenth Circuit noted, though in an unpublished opinion, that "the MVRA requires prisoners to apply 'substantial resources from *any source*'— not just from windfalls—to their restitution obligations." *United States v. Elwood*, 757 F. App'x 731, 736 n.5 (10th

---

[3] Other courts have rejected the seizure of accumulated prison wages, either because "the institution that was incarcerating" the prisoner should not be considered as "any source," *Kidd*, 23 F.4th at 786–87, or because "gradual payments [of prison wages] are not 'substantial,'" *Carson*, 55 F.4th at 1057. These arguments are well-reasoned, but we are limited to deciding only the case before us. Because the government has never sought Myers's prison wages, we leave for another day whether § 3664(n)—or any other provision—authorizes turnover of an inmate's prison wages. Nothing in this opinion should be construed as preventing a future panel from agreeing with these other circuits on the issue of exempting prison wages.

Cir. 2018) (quoting 18 U.S.C. § 3664(n)).[4]  These cases underscore that § 3664(n) is not as limited as Myers suggests.

In a final attempt to cabin § 3664(n), Myers appeals to the structure of federal restitution law.[5]  He points to another provision, 18 U.S.C. § 3664(k), which allows a district court to modify a defendant's restitution payment schedule in some cases.  Under § 3664(k), a defendant must notify the district court and the government of "any material change in the defendant's economic circumstances that might affect [his] ability to pay restitution."  18 U.S.C. § 3664(k).  The district court can also accept notification from the government or the victim.  *Id.*  The district court "may" then exercise its discretion to "adjust the [defendant's] payment schedule, or require immediate payment in full, as the interests of justice require."  *Id.*  On Myers's view, this "broad and discretionary rule" compels a narrow interpretation of § 3664(n).  Because if the gradual accumulation of small deposits from family and friends triggers turnover under § 3664(n), then what is "structurally intended to be the limited exception to § 3664(k)" would supposedly "swallow the rule."

---

[4] The Tenth Circuit permits citation to unpublished decisions for their persuasive value.  10th Cir. R. 32.1(A); *see Good v. Dep't of Educ.*, 121 F.4th 772, 789 n.8 (10th Cir. 2024) ("We cite to unpublished decisions only for their persuasive value, recognizing that they do not constitute binding precedent.").

[5] Myers also argues that restricting § 3664(n) to sudden windfalls is necessary to avoid concerns about unconstitutional vagueness.  Because he did not make that argument before the district court, we do not consider it here.  *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213–14 (9th Cir. 2020).

That's wrong.  Section 3664(n) is not a "limited exception" to § 3664(k).  Section 3664(n) is an independent provision addressing a specific scenario: an inmate who receives substantial resources while in prison.  Section 3664(k), by contrast, is not limited to the prison context. More importantly, § 3664(k) gives district courts discretion to modify a payment schedule in "the interests of justice." But, for prisoners, § 3664(n) establishes an automatic payment requirement; a district court cannot balance the equities, and it need not wait for formal notification of a change in an inmate's financial circumstances before turning over his funds.  Section 3664(n) thus reflects Congress's "weighty policy determination" that inmates must put substantial resources received during their incarceration toward unpaid restitution.  *See United States v. Novak*, 476 F.3d 1041, 1043 (9th Cir. 2007) (en banc).  And again, "substantial resources from any source" includes accumulated deposits from an inmate's family and friends.

What's more, Myers cites no authority for the view that § 3664(n) and § 3664(k) cannot serve overlapping roles in the restitution-enforcement scheme.  It's no wonder why. The MVRA contemplates enforcement of a restitution order through "[all] available and reasonable means."  18 U.S.C. § 3664(m)(1)(A)(ii); *see also United States v. Holden*, 908 F.3d 395, 405 (9th Cir. 2018) (identifying both § 3664(n) and § 3664(k) as mechanisms for seizing newly acquired funds).  Given that direction, and the distinct requirements for turnover under § 3664(n) and § 3664(k), we can give effect to each provision despite the occasional overlap in application.  *See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001).

\*   \*   \*

The phrase "substantial resources from any source" is not limited to payments from single sources. 18 U.S.C. § 3664(n). Nor does it refer only to windfalls or sudden financial injections. Thus, the district court properly invoked § 3664(n) to turn over deposits from family and friends that accrued to form a substantial sum in Myers's inmate trust account.[6]

## B

We turn next to Myers's argument that the district court's turnover order contravenes the judgment's restitution provisions. In his view, the district court erred by requiring him "to pay more than the terms of his restitution order command." We disagree.

Myers's restitution order has two conditions. Payments must "begin immediately." And payments "shall not be less than 25% of [Myers's] monthly gross earnings" while incarcerated. Neither condition kept the district court from turning over extra funds under § 3664(n). The statute says that if an inmate receives substantial resources while in prison, he "*shall be required* to apply the value of such resources" to his unpaid restitution. 18 U.S.C. § 3664(n) (emphasis added). That language is self-executing—a district court need not amend an inmate's restitution order before authorizing turnover under § 3664(n). *See, e.g.*, *Carson*, 55 F.4th at 1056 ("[S]ection 3664(n) provides for automatic modification, provided that the necessary findings are made.").

---

[6] Myers does not contest the district court's conclusion that the $1,233.73 in accumulated deposits is a "substantial resource" under § 3664(n). So we need not address when resources are "substantial" in this context.

Even if § 3664(n) were not automatic, applying it here tracks Myers's restitution order.  The order sets a floor on Myers's restitution payments: they "shall not be *less than*" 25% of his monthly prison earnings.  The "not less than" language does not prevent the government from collecting more than the minimum payment under the restitution order.  *See United States v. Lemoine*, 546 F.3d 1042, 1044, 1050 (9th Cir. 2008).  That makes sense.  The restitution order "only accounted for funds that [Myers] either possessed or was reasonably expected to possess when the order was entered."  *Saemisch*, 70 F.4th at 9 (citing 18 U.S.C. § 3664(f)(2) (restitution orders must account for a defendant's current assets and projected earnings)).  So it would be odd to construe the restitution order's conditions as a bar to the district court's authority under § 3664(n) to authorize turnover of newly acquired funds.

Myers counters that while the restitution order requires him to begin making payments immediately, it does not make the entire restitution amount due immediately.  As the argument goes, the government thus lacks authority to force payments exceeding "25% of [Myers's] monthly gross earnings."  Myers's argument relies on a false premise—the restitution order *does* make the entire amount due immediately.  Generally, a "person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments."  18 U.S.C. § 3572(d)(1); *see also United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) ("[A] restitution order is enforceable as a lien upon *all* of the defendant's property at the time judgment is entered.").

In requiring that payment "begin immediately," the district court did not set a payment schedule, dictate payment

on a date certain, or specify an installment plan. The restitution order thus compels Myers to satisfy his restitution obligation "immediately." 18 U.S.C. § 3572(d)(1); *see United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016) ("The federal criminal code *requires* that restitution be paid immediately unless the district court provides otherwise . . . ."). The government's effort to speed up the process with § 3664(n) comports with that requirement.

## C

Finally, we address Myers's claim that the district court abused its discretion in declining to hold an evidentiary hearing on the composition of his trust account. Recall that Myers routinely spent his funds at the prison commissary and distributed them to other individuals. That fact, combined with the government disclaiming seizure of Myers's prison wages under § 3664(n), created a practical problem. How could the district court determine which of the remaining funds in Myers's trust account were from outside deposits versus prison wages?

Myers argues that the proper course was to conduct an evidentiary hearing to determine which of the funds could be "specifically identified" as prison wages. The district court took a different tack. At the government's suggestion, the district court limited its analysis to transactions from 2022. Because there was no way to differentiate between Myers's prison wages and other funds being spent, the district court assumed that all his prison wages from 2022 remained in the account. It then deducted those wages ($388.80) from the current balance ($1,622.53), yielding the final turnover of

$1,233.73.[7] *Myers*, 2023 WL 7017707, at *3. Concluding that the government had "presented the necessary evidence" to make this calculation, the district court declined Myers's request for an evidentiary hearing. *Id.* at *1.

That decision was not an abuse of discretion. First, the statute does not require an evidentiary hearing following a turnover motion under § 3664(n). *See United States v. Rice*, 38 F.3d 1536, 1546 (9th Cir. 1994). The statute contemplates an evidentiary hearing when initially imposing restitution. 18 U.S.C. § 3664(d)(4). But even then, the decision to hold such a hearing is discretionary. *Id.* ("After reviewing the report of the probation officer, the court *may* require additional documentation or hear testimony." (emphasis added)). The district court based its analysis on a comprehensive BOP ledger listing every deposit and withdrawal from Myers's trust account beginning in 2013. It's not clear what additional information would have been elicited at an evidentiary hearing that was not already available to the district court. It was therefore not an abuse of discretion to rely on the existing documentary evidence in resolving the turnover motion. *See Rice*, 38 F.3d at 1546.

Second, we see nothing wrong with the district court's method for segregating Myers's prison wages. The BOP ledger revealed that Myers received over $30,500 in total deposits from 2013 to 2022. Tracing each of these deposits to see which were spent over nine years is impractical. And because Myers's total spending far exceeded his annual prison wages, the district court's focus on the 2022 transactions reasonably and conservatively accounted for all

---

[7] The government's other proposals—a pro rata approach and a formula that traced the deposits in Myers's account—would have led to slightly larger turnovers, leaving Myers with less money.

remaining wages that Myers earned beginning in 2013. Indeed, the district court's turnover order ($1,233.73)— which assumed that Myers did not spend any prison wages from 2022—was less than half of Myers's total prison wages since 2013 ($2,747.25). It was well within the district court's discretion to employ this method and forgo an evidentiary hearing.

IV

Congress enacted the MVRA "to help victims of crime secure prompt restitution." *Dolan v. United States*, 560 U.S. 605, 613 (2010). To that end, § 3664(n) authorizes turnover of "substantial resources" that an inmate receives "from any source"—not just payments from a single source, and not just windfalls or sudden financial injections. 18 U.S.C. § 3664(n). Thus, the district court's turnover order did not unlawfully override the judgment's restitution provisions. Nor did the district court abuse its discretion in declining to hold an evidentiary hearing on the composition of Myers's trust account.

**AFFIRMED.**

McKEOWN, Circuit Judge, dissenting:

Under 18 U.S.C. § 3664(n), a defendant who "receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration" is required to "apply the value of such resources to any restitution or fine still owed." The most logical interpretation of this statute is that it applies only to resources that are substantial at the time of receipt. Because I disagree with the majority's interpretation, I respectfully dissent.

The text of § 3664(n), though brief, contains key terms— "receives," "substantial resources," "from any source," "including inheritance, settlement, or other judgment." Although the statute applies during a defendant's incarceration, it must be read in conjunction with 18 U.S.C. § 3664(k), which requires both incarcerated and released defendants to notify the court and the Attorney General "of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." Both subsections serve the common policy goal of ensuring victims receive restitution.

Section 3664(n) is susceptible to competing interpretations. It might apply only to windfalls, in line with Myers's position and the view taken by the First, Fifth, and Sixth Circuits. *See United States v. Saemisch*, 70 F.4th 1, 6 (1st Cir. 2023) ("[T]he MVRA requires certain defendants to apply to their restitution obligation any sudden windfalls they receive."); *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019) ("[W]e think [§ 3664(n)] refers to windfalls or sudden financial injections."); *United States v. Carson*, 55 F.4th 1053, 1056 (6th Cir. 2022) (describing § 3664(n) as a "windfall provision"). This approach interprets the phrase

"including inheritance, settlement, or other judgment" to cabin the nature of the source and limit the provision to singular, large, and unanticipated gains. Alternatively, as the majority urges, § 3664(n) could apply to any substantial aggregated amount, including amounts originating from multiple distinct sources over any period. No appellate court has adopted this view. Or § 3664(n) could apply to a substantial amount, from any source, so long as the amount is substantial *at the time it is received*.

I think the last interpretation—that substantiality is measured at the time of receipt—is the most straightforward and logical reading of the text based on § 3664(n)'s use of the present tense "receives." The parties' and the majority's arguments in favor of the two other alternatives—that § 3664(n) applies only to windfalls, or that it applies to aggregated amounts—do not persuade me otherwise.

I agree with the majority's rejection of the first construction, which would limit § 3664(n) to only windfalls. The Fifth Circuit's decision in *Hughes*, and later cases adopting *Hughes*'s reasoning, offer little rationale for why § 3664(n) should apply only to "windfalls or sudden financial injections," but not to other substantial amounts. *Hughes*, 914 F.3d at 951; *see Saemisch*, 70 F.4th at 6; *Carson*, 55 F.4th at 1056. As the majority observes, not all sources are unforeseen windfalls. For example, an inheritance from an ailing spouse or relative may be expected. Nor must an amount be huge in order to be substantial. What matters, according to § 3664(n)'s text, is that the amount is "substantial"—not that it is unforeseen or otherwise extraordinary.

But applying § 3664(n) to any substantial aggregated amount, as the majority proposes, is also not a natural

interpretation of the statute. Rather, in my view, reading § 3664(n) to require substantiality at the time of receipt makes the most sense.

To begin, the statutory text applies to any person who "receives substantial resources." It does not, for instance, apply to individuals who "possess," "control," "accumulate," or "rack up" such resources. Nor does it apply to individuals who "have received" substantial resources. As we know, when construing a statute, "Congress' use of a verb tense is significant." *United States v. Wilson*, 503 U.S. 329, 333 (1992). Although "words used in the present tense include the future as well as the present," 1 U.S.C. § 1, "the present tense generally does not include the past." *Carr v. United States*, 560 U.S. 438, 448 (2010). Because § 3664(n) uses the present-tense "receives," it requires contemporaneity: the resources must be substantial at the time of receipt.

The majority contends that the word "receives," which includes a defendant's present and future receipt of resources, applies to resources that are not yet substantial but will become substantial in the future when combined with other resources. Including resources that could, at some point in the future, become substantial would create a moving target for defendants attempting to comply with § 3664(n).

My proposed reading avoids potential ambiguity with respect to whether the singular "any source" necessarily includes the plural "any sources." *See Friends of the Inyo v. United States Forest Serv.*, 103 F.4th 543, 554 (9th Cir. 2024) (noting that the Dictionary Act "does not transform every use of the singular 'a' into the plural 'several'" (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021))).

The relevant unit of analysis is the individual transaction, which naturally stems from only one source. Section 3664(n)'s listed examples support this interpretation, as each example—inheritance, settlement, or judgment—is a single event. I agree with the majority that the list is illustrative, not limiting, and here, it helpfully furnishes three examples where a defendant receives substantial resources in a discrete instance.

This approach also avoids subjecting prison wages to § 3664(n)'s turnover requirements. Because prison wages are not substantial when deposited into an inmate's account, they would not trigger § 3664(n), regardless of whether those wages eventually accumulate. There is an emerging consensus across circuits exempting prison wages from § 3664(n). *See Saemisch*, 70 F.4th at 11 (First Circuit); *Hughes*, 914 F.3d at 951 (Fifth Circuit); *Carson*, 55 F.4th at 1057 (Sixth Circuit); *United States v. Kidd*, 23 F.4th 781, 787 (8th Cir. 2022); *United States v. Poff*, 781 F. App'x 593, 595 (9th Cir. 2019) (unpublished). In light of this consensus—and given the government's express concession that prison wages are exempt from § 3664(n)—I would adopt a construction of § 3664(n) that would not risk subjecting prison wages to mandatory turnover.

The majority "leaves for another day" whether § 3664(n) applies to prison wages. But construing the statute in a way that leaves that issue hanging risks an unanticipated result. If § 3664(n) applies to any aggregated amount, as long as that amount eventually becomes "substantial," prison wages could easily be swept up in a turnover of the commingled funds that sit in a prisoner's account. Nor could the majority remedy this issue by simply declaring prison wages exempt, for an exemption would be unmoored from the text and inconsistent with the majority's reading. Declaring one

would run roughshod over the conventions of statutory interpretation. In contrast, my construction provides a practical and principled approach to prison wages so that they are not swept up in § 3664(n)'s mandatory turnover requirement.

Of course, should an inmate accrue substantial resources—for instance, by receiving many small transfers from friends, family, or other sources and accumulating rather than spending those sums—§ 3664(k) can kick in. This scenario would present a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k). The defendant would be required to notify the court and the Attorney General of the "change of circumstances," which would permit the court or the victim to seek adjustment or immediate payment of restitution.

The majority's contrary argument suffers from several weaknesses. To start, although § 3664(n) applies when a defendant receives resources "during a period of incarceration," this phrase distinguishes § 3664(n) (which applies only during incarceration) from § 3664(k) (which applies any time after sentencing). This phrase does not, however, provide a basis to combine resources received during incarceration when evaluating substantiality. And the majority identifies no language in the statute that specifically invites or permits aggregation.

Nor does the majority's reliance on other authority—including *Kidd* and *Small*—help its conclusions. It is curious that the majority relies on *Kidd*. There, the Eighth Circuit rejected the notion that § 3664(n) "refers only to 'windfalls or sudden financial injections.'" *Kidd*, 23 F.4th at 787. On that point the majority and I agree. But the analysis in *Kidd*

is not aligned with the majority's reading of the statutory text. The court in *Kidd* stated that Congress, in authoring § 3664(n), "focused on single transactions from outside sources," thereby excluding prison wages from mandatory turnover under § 3664(n). *Id.* Although the quoted excerpt refers to outside "sources" as plural, that use flowed from the context of the sentence, not from *Kidd*'s interpretation of the statute. The majority appears to misread the court's holding, which limits § 3664(n) to "*single transactions*" as opposed to gradual accruals. *Id.* (emphasis added).

The effort to rely on Justice Thomas's dissent in *Small* fares no better. *Small v. United States*, 544 U.S. 385, 396 (2005) (Thomas, J., dissenting). That dissent addresses the broad sweep of "any" with respect to scope, not quantity, and is at odds with the Court's majority opinion. Nor do the other cases cited by the majority—*Carson*, *White*, and *Robinson*— expressly endorse the "multiple sources" reading of § 3664(n). The Sixth Circuit in *Carson* says that "[i]f the record clearly showed that all of the garnished funds came from [Carson's family and stimulus checks] and were sufficiently 'substantial,'" § 3664(n) would apply. *Carson*, 55 F.4th at 1058. But that is the extent of the guidance *Carson* provides. The Sixth Circuit did not say, for instance, that those funds need only be "substantial" in the aggregate or that Carson's family and the stimulus checks could be grouped together analytically. The Seventh Circuit in *White* simply clarified that money from family is not automatically exempt from § 3664(n). *United States v. White*, 745 F. App'x 646, 648 (7th Cir. 2018) (unpublished). And *Robinson* does not cite to or even apply in the § 3664(n) context. *United States v. Robinson*, 467 F. App'x 100, 102 (3d Cir. 2012) (unpublished). The majority opinion identifies no authority adopting its proposed construction of § 3664(n).

Finally, the majority's citations to the Prison Litigation Reform Act ("PLRA"), 42 U.S. § 1997e *et seq.*, and revisions to the tax code are neither relevant nor persuasive in this context. The PLRA shares no language in common with the MVRA, and congressional efforts to eliminate prisoner suits have nothing to do with restitution provisions. And although the tax code was revised the same year and happens to single out inheritances and settlements for special treatment, it has nothing to do with restitution, is not directed towards the same subject as the MVRA, and doesn't even use the same turns of phrase. This is not an instance where the canon of *in pari materia* might apply. *Cf. Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) (applying canon where statutes "pertain[ing] to the same subject . . . should therefore be construed 'as if they were one law.'"). "Without more, . . . '[t]he mere fact that the words are used in each instance is not a sufficient reason for treating a decision on the meaning of the words of one statute as authoritative on the construction of another statute.'" Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 172–73 (2012). Congress' putative intent in passing entirely distinct statutes should not guide our interpretation of § 3664(n).

I conclude that § 3664(n) applies only to resources that are substantial at the time of receipt. Because the district court assessed whether Myers' trust account was a substantial amount in total, rather than analyzing individual transactions for substantiality, I would vacate the order authorizing payment and remand for the district court to

conduct a transaction-by-transaction analysis.[1] For these reasons, I respectfully dissent.

---

R. NELSON, Circuit Judge, concurring in the denial of rehearing en banc:

For reasons explained in the Amended Opinion, the panel majority's interpretation of 18 U.S.C. § 3664(n) is the best textual reading.  And our Court properly denied rehearing en banc.  First, the government reasonably secured just $1,200 in restitution (or about four percent of the inmate's funds received in the prior decade during incarceration) for victims consistent with the Mandatory Victims Restitution Act (MVRA).  Second, the panel majority created no new circuit split.  On the contrary, the dissent's view would create a circuit split by adopting an interpretation of § 3664(n) that no other court has adopted and the parties did not argue.

1.  First, some relevant background.  In 2005, Ronald Myers was ordered to pay $40,406 in criminal restitution. Am. Op. at 7.  By December 2022, Myers still owed $35,011.09, having paid just over $5,000 (about $317 per year). *Id.* at 8.  In the decade prior, Myers was given $27,872 from friends and family. *Id.*  When the government learned of deposits made in 2022, it sought turnover under § 3664(n) to contribute to Myers's unpaid restitution order. *Id.*

Because analyzing over $27,000 in and out of Myers's account over ten years would be "extremely difficult," the

---

[1] Although I would remand, I agree in principle with the majority's view in Part B that the district court did not err by requiring Myers "to pay more than the terms of his restitution order command."

government only sought funds deposited in 2022.  Gov. Mot.
to Authorize Payment from Inmate Trust Account, *United
States v. Myers*, 2023 WL 7017707, ECF No. 270 at 8 n.3.
It also excluded Myers's earned prison wages.  *Id.* at 8.  The
government took the most lenient approach for turnover of
Myers's 2022 funds and assumed that all the prison wages
earned in 2022 remained in his account.  *Id.* at 8–9.  That
exempted all $388.80 of Myers's 2022 prison wages, leaving
$1,233.73 subject to turnover.  *Id.*

In all, the government sought only four percent of the
money deposited by family and friends during Myers's
incarceration from 2013 to 2022, to repay less than three
percent of his victims' restitution.  The district court ordered
turnover, after exempting Myers's prison wages and
ensuring that he maintained "a reasonable amount for basic
living expenses."  *United States v. Myers*, 2023 WL
7017707, at *3 (E.D. Wash. May 10, 2023).  The panel
majority affirmed the district court's unremarkable decision.

2.  The panel majority did not create a new circuit split;
it merely joined the Eighth Circuit on the preexisting
windfall split.  The dissent's block quotes of the circuit
opinions (at 51–56) makes clear the difference—those courts
only held that accumulated prison wages were not
substantial.  In *United States v. Kidd*, "the primary issue on
appeal [was] whether [§ 3664(n)] applies to accumulated
*prison wages*."  23 F.4th 781, 783 (8th Cir. 2022) (emphasis
added).  And the Eighth Circuit held only that "§ 3664(n)
does not apply to prison wages."  *Id.* at 787.

The Eighth Circuit ordered the district court on remand
to consider § 3664(k) if the $5,500 was the "accumulation of
small amounts received from various sources."  *Id.* at 788.
But the court was referring to the likelihood that the $5,500

included prison wages, which would be subject to garnishment under § 3664(k), rather than "the receipt of 'substantial resources' from outside [as opposed to various] sources." *Id.* at 787. It never addressed and therefore could not "squarely reject," Dissent at 53, the Amended Opinion's reasoning.

Much the same with the Sixth Circuit's decision in *United States v. Carson*, 55 F.4th 1053 (6th Cir. 2022). The Sixth Circuit did not order the district court to "examin[e] whether each deposit is itself 'substantial' at the time of deposit." Dissent at 56. Rather, it remanded for the district court to determine the source of the funds "to ensure that no prison wages are garnished." *Carson*, 55 F.4th at 1057. *Carson* established that payments from outside sources accumulate quicker than prison wages and could be substantial in a way that prison wages cannot be. The Sixth Circuit never held or suggested that accumulation was barred by the statute.

And the First Circuit in *United States v. Saemisch*, 70 F.4th 1 (1st Cir. 2023), relied on the reasoning in the Fifth Circuit's decision in *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019), that § 3664(n) only applies to windfalls. Under that flawed reasoning,[1] the First Circuit held that district courts are required to determine whether the sources of the substantial resources are windfalls. *Saemisch*, 70 F.4th at 11.

---

[1] Like both the panel dissent and my colleagues' dissent, the panel majority disagreed with the First Circuit that § 3664(n) only applies to windfalls. *See* Am. Op. at 18–19 (citing *Kidd*, 23 F.4th at 786–87; *United States v. Elwood*, 757 F. App'x 731, 736 n.5 (10th Cir. Dec. 13, 2018)).

Each of these cases follows a key holding: the district court must find that prison wages are not included in a § 3664(n) turnover order.  *See Kidd*, 23 F.4th at 783; *Carson*, 55 F.4th at 1056; *Saemisch*, 70 F.4th at 12.  Any distinction between the Amended Opinion and these cases rests on the fact that unlike in those cases, the district court below excluded prison wages.  *Myers*, 2023 WL 7017707, at *3. And the panel majority reserved judgment on the prison wage issue and joined the Eighth Circuit on the windfall issue (with which the dissent agrees).  That does not a circuit split create.

On the other hand, the dissent's approach would create a circuit split.  As the panel dissent noted, the "substantial at the time of receipt" approach rejects the First and Fifth Circuit's construction of the statute.  *United States v. Myers*, 136 F.4th 917, 930 (9th Cir. 2025) (McKeown, J., dissenting).  And the Amended Opinion clarifies what the original opinion already suggested:  any future panel is free to follow *Carson* in excluding prison-wages from § 3664(n). *See* Am. Op. at 18 n.3.  Thus, while the panel dissent avoids creating a circuit split, my dissenting colleagues advocate for creating a circuit split.  The panel majority properly rejected such a result.  *See United States v. Anderson*, 46 F.4th 1000, 1008 (9th Cir. 2022) ("Indeed, adoption of the dissent's reading of the statute would create an unwarranted circuit split, a result we understandably avoid if at all possible.").

3.  The dissent's interpretation would frustrate the plain text of the statute.  Reading substantiality to be determined "at the time of receipt, i.e., when they were deposited in the inmate trust fund account" (Dissent at 57 n.4) would read the textual examples of "inheritances, settlements, and other judgments," out of the statute.  Those sums are often deposited through smaller, less "substantial" installments

over time, and would anti-textually fall outside § 3664(n). As one of our district courts summed up the dissent's rationale: "[E]xcluding aggregated sums would produce the absurd result of allowing an owing inmate to effectively bypass § 3664(n) altogether by simply arranging for multiple smaller deposits." *United States v. Anwar*, 662 F. Supp. 3d 1169, 1177 (E.D. Wash. Nov. 1, 2022). Under the dissent's approach, an inmate with a ten-year sentence could carve up a $100,000 windfall ("substantial resources" under any circuit's analysis) into daily payments of $28, and the government would be unable to order turnover for victims' restitution under § 3664(n). The text of the MVRA, for good reason, does not support such an anomalous result.

For these reasons, I concur with the court's decision to deny rehearing en banc.

---

WARDLAW, Circuit Judge, joined by GOULD, KOH, and MENDOZA, Circuit Judges, dissenting from the denial of rehearing en banc:

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A–3664, serves the important interest of requiring convicted criminals to compensate the victims of their crimes. But, in enacting the statute, Congress ordered district courts to consider the defendant's ability to pay in creating the payment schedule at the time of imposing the restitution order, and enacted provisions that allow courts to adjust that payment schedule when the defendant's financial circumstances change. The particular provision that applies, however, is critical: one requires a district court to find a "material change in the defendant's economic circumstances" and that it is in "the interests of justice" to

require the defendant to pay more in restitution, 18 U.S.C. § 3664(k), and the other requires the automatic turnover of a prison inmate's trust funds, 18 U.S.C. § 3664(n), which are regulated by the Bureau of Prisons' ("BOP") Inmate Financial Responsibility Program ("IFRP").

The panel majority here muddled these separate statutory provisions to sweep small sums deposited over time by family and friends (and perhaps even prison wages) that have become "substantial" into the MVRA's automatic turnover provision, 18 U.S.C. § 3664(n). Congress, however, made clear that material changes in a defendant's financial circumstances are governed by a different provision: 18 U.S.C. § 3664(k). The panel decision is incorrect, creates a circuit split, and deprives inmates of the monies saved in their trust fund accounts to pay for necessities, including food and hygiene, to afford to communicate with friends and family, and to save for release and reentry. Moreover, it applies to inmates held in federal institutions in the Ninth Circuit only—and not across the federal system—"interfering with the BOP's carefully constructed Inmate Financial Responsibility Program." *United States v. Kidd*, 23 F.4th 781, 787 (8th Cir. 2022).

We should have reheard this case en banc.

## I.  STATUTORY BACKGROUND

### A. The MVRA

In 1996, Congress enacted the MVRA with "[t]he primary and overarching goal . . . to make victims of crime whole." *United States v. Brock-Davis*, 504 F.3d 991, 998 (9th Cir. 2007) (internal citations omitted); 18 U.S.C. §§ 3663A–3664, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat 1214, 1234

(1996).    Accordingly, the MVRA requires that the sentencing courts order restitution "in the full amount of each victim's losses."    18 U.S.C. § 3664(f)(1)(A).    But, Congress also recognized that criminal defendants are often unable to pay the entire amount of restitution all at once: the MVRA requires that the district court order a payment schedule after considering the defendant's assets, projected earnings, and financial obligations.  18 U.S.C. § 3664(f)(2). The MVRA therefore reflects a careful balance between the goal of fully compensating crime victims and the reality that defendants often have limited financial resources.

Of course, a defendant's ability to pay restitution may change over time, and the district court may be unable to predict these changes at the time of sentencing. Accordingly, Congress expressly provided that the original schedule of restitution payments can change.  Congress required the district court's notification of these changed circumstances in MVRA § 3664(k):

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.   The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim.   The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances.  Upon receipt of the notification, the court may, on its own

> motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

18 U.S.C. § 3664(k).  Section 3664(k) thus applies to any defendant ordered to pay restitution, beginning at the time of sentencing and extending until the entire restitution amount is paid.  If, at any point during that time, the defendant's economic circumstances materially change, the district court may alter the restitution payment schedule after considering the interests of justice.

The MVRA also provides that the government can automatically collect restitution payments—without any judicial consideration and at a rate more rapid than the previously ordered payment schedule—in certain circumstances.  Section 3664(n) provides that "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n).  Unlike § 3664(k), § 3664(n) applies only to defendants while they are "incarcerat[ed] after a conviction." *United States v. Lillard*, 935 F.3d 827, 834 (9th Cir. 2019).

### B. The IFRP

In 1987—nine years before the passage of the MVRA— the BOP implemented the IFRP nationwide.  Inmate Financial Responsibility Program, 52 Fed. Reg. 10528 (Apr. 1, 1987) (codified at 28 C.F.R. pt. 545).  The BOP crafted the IFRP to ensure that inmates work toward meeting their

"legitimate financial obligations," including restitution, while also saving money to pay for necessities and their reentry. 28 C.F.R. § 545.10. As part of the IFRP, BOP "unit staff" work with inmates to "develop a financial plan," then BOP staff "monitor the inmate's progress" in following that plan. 28 C.F.R. § 545.11. "Permitting the BOP independently to develop voluntary financial plans through the IFRP not only assists the BOP to meet its rehabilitative goals for prisoners, it also ameliorates the practical difficulties engendered by requiring sentencing courts to set a restitution repayment schedule without knowledge of whether a defendant will be employed in prison or the amount he will receive in wages or outside assistance." *United States v. Lemoine*, 546 F.3d 1042, 1050 (9th Cir. 2008). Indeed, "[t]he IFRP allows the BOP to respond immediately to an inmate's changing financial circumstances." *Id.*

The MVRA and IFRP thus combine to ensure that incarcerated defendants pay restitution. For example, "district courts" may "play a continuing role in setting the terms of the mandatory portion of an inmate's restitution repayment schedule," through the application of § 3664(k). *Lemoine*, 546 F.3d at 1050. "This process permits courts to raise the binding payment floor in response to particular changes if they desire, while leaving room for the BOP to take full advantage of its institutional expertise and resources to create voluntary, flexible financial plans as evolving conditions dictate." *Id.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

After his federal conviction in 2005, Ronald Bruce Myers was incarcerated and ordered to pay $40,406 in restitution. On November 10, 2022, the United States

requested that the BOP encumber Myers's inmate account "in anticipation of [the government] bringing" a motion for payment under "§ 3664(k)."  Gov't's Mot. to Authorize Payment from Inmate Trust Account at 3 ¶ 10, *United States v. Myers*, No. 2:04-CR-00173-MKD-1, 2023 WL 7017707 (E.D. Wash. May 10, 2023), ECF No. 270.  At the time, Myers's inmate account balance was $1,622.53,[1] consisting of funds deposited from friends and family, and his prison wages.  After Myers moved for a hearing on the seizure of his inmate trust account funds, the government filed a motion requesting that the district court "enter an order authorizing" the BOP to turn over the funds under § 3664(n), rather than § 3664(k).[2]  *Id.* at 1.

---

[1] In the decade before the government filed its seizure motion, Myers received $27,872.61 from family and friends—around $3,000 per year—and spent most of that money at the prison commissary on the necessities of daily living, as the federal prison system has shifted the cost of many necessities onto inmates, their families, and their friends. *See infra* Part V.  Our concurring colleague states that "the government sought only four percent of the money deposited by family and friends during Myers's incarceration from 2013 to 2022."  Concurrence at 34.  This figure is misleading.  The government did not move to seize any of Myers's funds until 2022.  At that time, the government seized 76% of the $1,622.53 that remained in Myer's trust fund account, leaving him with only $388.80 to spend on necessities.  Moreover, the fallout of the majority's interpretation of § 3664(n) is not limited to Myers's account.  The majority opinion's sweeping interpretation allows the government to move for the automatic seizure of inmates' funds without limit as to the number of total seizures authorized.  In other words, the government can repeatedly move to seize the money in any inmate's account any time it reaches a relatively modest threshold.

[2] In the government's motion for seizure before the district court, the government argued that § 3664(n) was the "appropriate" collection procedure, though the government argued that § 3664(k) could apply in

The district court granted the government's motion, holding "that substantial aggregated sums," including the deposits from Myers's family and friends, "satisfy the requirement of 'substantial resources'" under § 3664(n), though the "gradual accumulation of prison wages does not." *Myers*, 2023 WL 7017707, at *2. The district court assumed that Myers's accumulated prison wages for the year had not been spent, subtracted that amount ($388.80) from the $1,622.53 total, and authorized the transfer of the remaining $1,233.73. *Id.*

On appeal, the panel majority affirmed the district court turnover order. *United States v. Myers*, 136 F.4th 917, 920 (9th Cir. 2025). The majority relied on the Dictionary Act to hold "that § 3664(n) applies not just to one-time financial windfalls, but also to substantial aggregated sums from multiple sources—like family and friends—that gradually accrue in an inmate's trust account." *Id.* at 921–22 (citing 1 U.S.C. § 1). According to the majority, due to the "long-standing rule of interpretation" that "the singular includes the plural," the statute's use of the word "source" in its singular form did not indicate that the statute only applies to one-time payments and instead was better read to mean "sources." *Id.* at 922–23. The majority then addressed the statute's present tense use of the word "receives," reasoning that "[w]ords used in the present tense include the future as well as the present," and therefore § 3664(n) applies to "any inmate who 'receives' substantial resources—now or in the

---

the alternative as "[t]he receipt of $1,622.53 in funds by the Defendant certainly constitutes a material change in his 'economic circumstances.'" Gov't's Mot. to Authorize Payment from Inmate Trust Account at 9–11, *Myers*, 2023 WL 7017707, ECF No. 270. The district court based its order exclusively on § 3664(n) and did not consider § 3664(k) as part of its analysis. *See Myers*, 2023 WL 7017707, at *2.

future." *Id.* (quoting 1 U.S.C. § 1). The majority left "for another day whether § 3664(n)—or any other provision—authorizes turnover of an inmate's prison wages," *id.* at 925 n.3, and the majority opinion has now been amended to expressly disclaim any indication that its holding implicates prison wages. *Myers,* Amended Op. at 18 n.3.

Dissenting, Judge McKeown "conclude[d] that § 3664(n) applies only to resources that are substantial at the time of receipt." *Id.* at 929, 932 (McKeown, J., dissenting). She explained that "[b]ecause § 3664(n) uses the present-tense 'receives,' it requires contemporaneity: the resources must be substantial at the time of receipt." *Id.* at 930 (McKeown, J., dissenting). Further, an inmate's accrual of substantial resources over time implicates § 3664(k), which has an "interests of justice" provision, rather than the automatic turnover of § 3664(n). *Id.* at 931 (McKeown, J., dissenting). Judge McKeown explained that her interpretation ensures that § 3664(n) does not apply to accumulated prison wages, in line with the "emerging consensus across circuits." *Id*. at 930–31.

## III.   STATUTORY TEXT

### A. Section 3664(n) Applies Only When Assets Are Substantial at the Time of Receipt

The statutory text makes clear that Judge McKeown is correct: § 3664(n) applies to an inmate who "receives substantial resources from any source." As Judge McKeown's dissent recognizes, the most logical interpretation is that § 3664(n) applies to only those resources that are substantial at the time of receipt. The natural reading of the present-tense "receives" indicates that the focus is on *the time* that the defendant "receives" resources.

Therefore, § 3664(n) applies to any inmate who "receives" substantial resources, not one who "has received" substantial resources by accumulating small payments over time and saving them so to become a present substantial amount. In construing a statute, "Congress' use of a verb tense is significant." *United States v. Wilson*, 503 U.S. 329, 333 (1992). According to the Dictionary Act, statutory "words used in the present tense include the future as well as the present," which implies "that the present tense generally *does not include the past*." *Carr v. United States*, 560 U.S. 438, 448 (2010) (emphasis added) (quoting 1 U.S.C. § 1); *see also United States v. Jackson*, 480 F.3d 1014, 1019 (9th Cir. 2007) ("[O]ne would not refer in the present tense to something that had already happened."). Here, § 3664(n) uses the present-tense "receives," implying that the section does not apply to those substantial resources that the defendant "received" (past tense) or "has received" (present-perfect tense). *See Hewitt v. United States*, 606 U.S. 419, 428 (2025) (explaining that "the present-perfect tense addresses 'a time-span beginning in the past and extending up to now.'" (quoting R. Huddleston & G. Pullum, The Cambridge Grammar of the English Language 143 (2002)).

That "adjacent provisions" of § 3664 use the present-perfect tense rather than the present tense "only strengthens the conclusion that" § 3664(n)'s use of the present tense "is meaningful." *Id*. at 430; *see also Barrett v. United States*, 423 U.S. 212, 217 (1976) (emphasizing that "Congress knew the significance and meaning of the language it employed" when Congress "used the present perfect tense" in the relevant section "in contrast to its use of the present tense" elsewhere in the statute). Section 3664(j)(1), for example, provides that "[i]f a victim *has received* compensation" from insurance, then the court shall order restitution to be paid to

that insurer.    18 U.S.C. § 3664(j)(1) (emphasis added). Similarly, § 3664(i) provides that "[i]f the court finds that more than 1 victim *has sustained* a loss," then "the court may provide for a different payment schedule for each victim." 18 U.S.C. § 3664(i) (emphasis added).

The majority opinion holds that § 3664(n) "imposes a turnover obligation on any inmate who 'receives' substantial resources—now or in the future," and therefore § 3664(n) applies to resources that become substantial after "they accumulate over time." *Myers*, 136 F.4th at 923.  Under the Dictionary Act, the present tense may be read to include the future.    However, that default rule cannot justify the application of § 3664(n) to Myers's inmate account.  The funds taken out of Myers's account were not funds he would receive in the future but had not yet received.  He was already in possession of the funds.  Indeed, those funds were the aggregate of resources Myers had acquired *in the past*.

The majority opinion does not explain how § 3664(n) could mandate the turnover of future, yet-to-be-received funds.   Nor did the majority explain how the funds in Myers's inmate account were supposedly "received" in the present and future, rather than representing the *present* accumulation of resources received in the past.  At the time of turnover, existent funds are not future resources.

The panel majority's present-as-future interpretation stretches the temporal scope of "substantial."  The majority opinion contends that "[w]hile resources from multiple sources may not be substantial at the time of receipt, they can reach that threshold if they accumulate over time."  *Id.* at 923.  Such a reading does not only require that "receives" be read as present and future—"receive or will receive"— but also requires that the modifier "substantial" operate

cumulatively across time rather than at discrete moments of receipt. After all, if an individual receives a small payment now, and then another small payment later, he has not received, and will not receive, a substantial resource in either of those individual transactions. Instead, he has received multiple resources over time and, if he saves those funds, then he may possess a substantial resource at the future time. But that interpretation is untethered from the text of § 3664(n), which focuses the analysis on the amount of resources at the time of receipt.

By contrast, other parts of the MVRA focus on the resources a defendant possesses rather than receives. *See, e.g.*, 18 U.S.C. § 3664(d)(1)(3) ("Each defendant shall prepare . . . an affidavit fully describing the financial resources of the defendant, including a complete listing of all assets"); § 3664(k) (focusing on the "defendant's economic circumstances"); *United States v. Saemisch*, 70 F.4th 1, 10 (1st Cir. 2023) ("Unlike section 3664(f), section 3664(n) does not contain any reference to factors relating to a defendant's financial condition. That omission is critically important. . . . [I]t is conspicuously clear that Congress's decision not to embed in section 3664(n) language directing courts to consider a defendant's financial circumstances was deliberate."). Because § 3664(n) does not refer to the defendant's possession of resources or overall financial situation, but rather applies to a defendant who "receives substantial resources," our analysis must focus on whether those resources were substantial at that time of receipt.

## B. Section 3664(n)'s Reference to "Any Source" Must Be Read in Context

The majority opinion erroneously concludes that "any source" includes "accumulated deposits from different

individuals," because, under the Dictionary Act, "the singular includes the plural," therefore the singular "source" should be read as "sources." *Myers*, 136 F.4th at 922. However, "[t]he Dictionary Act does not transform every use of the singular 'a' into the plural 'several.' Instead, it tells us only that a statute using the singular 'a' can apply to multiple persons, parties, or things." *Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021). And, even if we assume "source" means "sources," that does not mean that § 3664(n) applies to multiple sources *over time*. Instead, the statute instructs that the resources received must be substantial at the time of receipt, even if those resources come from multiple, independent sources. So, if an inmate receives a settlement from multiple sources at one time—for example, money from both an individual and an entity defendant—but together, the amount is substantial, then § 3664(n) may apply.

The panel majority's reading of § 3664(n) mystifies the statute's reference to "inheritance, settlement, or other judgments." I agree with the panel that this list is illustrative rather than limiting. But only Judge McKeown's interpretation—that the list is meant to exemplify that the language of "substantial resources" in § 3664(n) refers to individual, one-time transactions—makes the inclusion of the list useful. *Myers*, 136 F.4th at 930 (McKeown, J., dissenting). In contrast, the panel majority's reading conflicts with the statutory illustrations given, which all involve funds from a source awarded at one time, rather than funds aggregated from multiple sources over time. If Congress intended § 3664(n) to apply to aggregated amounts from multiple sources, the list of examples would likely include something like "savings" or "aggregated funds."

The majority theorizes that the "non-exhaustive list . . . does not cabin § 3664(n)'s otherwise broad scope" because "[t]he statute uses a far-reaching phrase—'any source'— followed by another expansive word—'including.'" *Id.* at 924. But, accepting that "any source" is expansive, that does not mean we should expand the time-period at which we analyze the substantiality of funds received. Here, the panel majority incorrectly expanded that time frame from the time the funds are received to an infinite time period over which funds may or may not become substantial. The more logical reading of "any source" is that although the funds may come from any *source*, the funds cannot be any *amount*; § 3664(n) applies only to an amount that is substantial at the time of receipt.

## C. Section 3664(k) Applies to Accumulated Resources Over Time

The MVRA already provides a mechanism for addressing defendants who accumulate substantial funds over time, so the confusion created by the majority is entirely unnecessary. Section 3664(k) provides that the district court may "adjust the payment schedule" of restitution "as the interests of justice require" anytime there is a "material change in the defendant's economic circumstances." 18 U.S.C. § 3664(k). Therefore, "[s]ection 3664(n) implements the restitution part of the sentence in a harsher manner than § 3664(k) by requiring the immediate" disgorgement "of the full value of newly-received substantial resources." *Lillard*, 935 F.3d at 835 (internal quotation marks and citations omitted).

Because § 3664(k) applies when there is a "material change in the defendant's economic circumstances," it covers a situation where a defendant accrues substantial

resources over time by saving up smaller amounts of funds. This makes good policy sense: § 3664(k) gives courts discretion to determine whether to order that the entirety of the inmate's newly acquired assets be paid toward restitution or, if instead, the inmate's restitution payment schedule should change. In contrast, § 3664(n) requires that all newly acquired assets automatically be applied to restitution without any judicial consideration. Giving judges discretion to determine the restitution payment required allows for a consideration of the practical realities of incarceration and the unique circumstances of the inmate and enables judges to tailor restitution payments accordingly.

Our concurring colleague suggests that excluding aggregated sums from the purview of § 3664(n) would produce an absurd result, as it would encourage inmates' gamesmanship to avoid paying restitution, for instance, by encouraging their families to make multiple small deposits instead of one large deposit. Concurrence at 35–36. But, even under the panel majority's opinion, small deposits by friends and family can only be seized once they accumulate to a substantial amount. Accordingly, even under the majority's reading, such small deposits would be outside the purview of § 3664(n) only so long as the inmate spends the money as soon as it is received. This is why the majority's interpretation disincentivizes inmate savings. Moreover, such small deposits, once accumulated, trigger the application of § 3664(k), and its interest of justice provision, as the accumulation of such deposits could be a material change in the inmates' financial circumstances. Indeed, that is the very type of situation Congress intended § 3664(k) to cover.

## IV.   CIRCUIT SPLIT

### A.  Other Circuits' Interpretation of § 3664(n)

Until the panel majority opinion in *Myers*, each circuit to publish an opinion addressing whether § 3664(n) applies to gradually accumulated funds in an inmate trust account had held that it does not.

The Fifth Circuit published the first opinion to analyze whether § 3664(n) applied to the gradual accumulation of funds.  Referencing three unpublished decisions, it soundly rejected this view:

> We do not think the gradual accumulation of prison wages constitutes "substantial resources" such that it fits within § 3664(n)'s ambit; rather we think this provision refers to windfalls or sudden financial injections. Indeed, in *United States v. Scales*, we suggested that this provision contemplates "unanticipated resources" that become "suddenly available." 639 F. App'x 233, 239 (5th Cir. 2016) (per curiam); *see also United States v. Bratton-Bey*, 564 F. App'x 28, 29 (4th Cir. 2014) ("Additionally, a defendant's receipt of a windfall during imprisonment triggers an automatic payment requirement."); *United States v. Key*, No. 3:12-CV-3026-L, 2013 WL 2322470, at *2 (N.D. Tex. May 28, 2013) ("There is no indication that Key has received a 'windfall'

> or 'substantial resources' of the type in
> section 3664(n).").

*United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019), *as revised* (Feb. 1, 2019), *as revised* (Feb. 14, 2019) (footnotes omitted). The *Hughes* Court explained that the "examples listed in § 3664(n)—'inheritance, settlement, or other judgment'—fit the mold of 'substantial resources,' but that prison wages," which accumulate gradually over time, "do not." *Id.*

Our unpublished decision in *United States v. Poff*, 781 F. App'x 593, (9th Cir. July 12, 2019), followed, relying heavily on *Hughes*. Holding that prison wages "do not qualify under § 3664(n)," we explained:

> As the Fifth Circuit noted [in *Hughes*], the examples in § 3664(n)—"inheritance, settlement, or other judgment"—share a similar quality. [*Hughes*, 914 F.3d at 951.] Applying the *noscitur a sociis* canon, these words should be given the "meaning that makes them similar." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012). The three statutory examples share the relevant characteristic of a one-time, lump-sum payment—a category that would not include, for example, periodically paid prison wages. *Hughes*, 914 F.3d at 951. Read in conjunction with the surplusage canon, which cautions against "an interpretation that renders [a provision] pointless," Scalia & Garner, at 176, we are satisfied that Congress would not

have included those three examples if it
intended § 3664(n) to apply more broadly.

*Poff*, 781 F. App'x at 594–95 (footnote omitted).

Next came *United States v. Kidd*. In *Kidd*, the Eighth
Circuit reviewed a district court's order that seized $5,500
from an inmate trust account under § 3664(n) and concluded
that "§ 3664(n) does not apply to accumulated prison
wages." 23 F.4th at 783. The Eighth Circuit disagreed in
part with *Hughes* and *Poff*, explaining that "§ 3664(n)
applies to an inmate's receipt of substantial resources" from
any source, not just windfalls. *Id.* at 786–87. However, the
*Kidd* court explained that the "inference" from the statute's
"wording is that Congress focused on single transactions
from outside sources," so the district court was required to
hold a hearing to determine the "sources of the accumulated
funds." *Id.* at 787. The Eighth Circuit reasoned:

> [T]he $5,500 at issue could include the
> receipt of "substantial resources" from
> outside sources that would be subject to
> § 3664(n). . . . Or, perhaps more likely, the
> $5,500 may be an accumulation of small
> amounts received from various sources that
> together amount to a "material change" in
> Kidd's economic circumstances that warrants
> exercise of the district court's discretion to
> "adjust the payment schedule" . . . "as the
> interests of justice require."

*Id.* at 787–88 (citations omitted). Thus, the Eighth Circuit
squarely rejected the panel majority's notion that § 3664(n)
applies to the accumulation of small deposits over time.

Instead, the interests of justice provision, § 3664(k), applies to such a scenario. Shortly after, in *Evans*, the Eighth Circuit reaffirmed that § 3664(n) does not apply to the accumulation of small deposits over time as instead "a gradual accumulation of 'small amounts received from various sources,' including prison wages, [] would constitute a 'material change in the defendant's economic circumstances' under § 3664(k)." *United States v. Evans*, 48 F.4th 888, 891 (8th Cir. 2022) (quoting *Kidd*, 23 F.4th at 787–88).

In *United States v. Carson*, the Sixth Circuit "agree[d] with the Fifth, Eighth, and Ninth Circuits, . . . the only courts that have addressed this issue" as to the scope of § 3664(n). 55 F.4th 1053, 1057 n.2 (6th Cir. 2022) (citing *Hughes*, 914 F.3d at 951; *Kidd*, 23 F.4th at 787; and *Poff*, 781 F. App'x at 594–95). In *Carson*, the inmate "periodically receive[d] prison wages and cash deposits from his family." 55 F.4th at 1055. "At oral argument, the government suggested . . . that a large portion" of Carsons's funds "consisted of federal stimulus payments issued during the COVID-19 pandemic." *Id.* at 1056. When his account reached "approximately $4,037.89" the government moved "to order the BOP to turn over all but $300 of those funds" under § 3664(n). *Id.* at 1055. The district court did so without offering Carson an opportunity to be heard. *Id.* The Sixth Circuit vacated the district court's order, holding that the district court "must first determine the source of the funds":

> This inquiry is necessary because section 3664(n) covers payments from outside sources, not gradually accumulated prison wages. To see why, consider the text. Section 3664(n) applies not just to any funds, but to

"*substantial* resources." 18 U.S.C. § 3664(n) (emphasis added); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012) (discussing the canon of *noscitur a sociis*, which allows a word to be defined by its "associates"). And prison wages aren't substantial.

Rather, a resource is "substantial" if it is of "ample or considerable amount or size," "weighty," or of "real significance." *E.g.*, Substantial, *Oxford English Dictionary Online* (3d ed. 2022). Corpus linguistics evidence from the 1990s—when the "substantial resource" language was added to section 3664(n)—confirms this understanding. The Corpus of Contemporary American English shows that the general public at that time most often associated "substantial" with "big," "large," "important," "significant," and "extensive." Brigham Young Univ., *Corpus of Contemporary American English*, http://corpus.byu.edu/coca. But prison wages are none of those things. Indeed, inmates accumulate 12¢ to 40¢ per hour for institutional work assignments, and 23¢ to $1.15 for UNICOR projects. Simply put, gradual payments of such small amounts are not "substantial."

*Id.* at 1057 (footnotes omitted). *Carson* evaluated the amount of payment at the time of receipt: considering

whether "a resource" is substantial, rather than examining the total amount of resources. *Id.* That explains why *Carson* cites the amounts paid to inmate workers per hour, rather than the total amount of prison wages that accumulated in the inmate's account. *Id.*

The panel majority asserts that "*Carson* recognized that § 3664(n) authorizes turnover of substantial funds from multiple sources." *Myers*, 136 F.4th at 922. But *Carson* does not hold that multiple deposits can be added together to become a substantial amount. Instead, when discussing whether funds are "sufficiently 'substantial' to warrant garnishment," *Carson* explains that "to a prisoner receiving no more than a hundred dollars a month in wages, *a cash deposit* of $2,663.05 from outside sources would be 'substantial.'" 55 F.4th at 1058 (emphasis added). *Carson* therefore supports examining whether each deposit is itself "substantial" at the time of deposit, rather than analyzing the aggregate of all deposits. *Carson* explains:

> Carson conceded that some of the money seized by the government came from his family. And during oral argument, the government asserted that Carson received stimulus checks. If the record clearly showed that all of the garnished funds came from these sources and *were* sufficiently "substantial," the district court could've permissibly ordered garnishment under section 3664(n).

*Id.* (emphasis added). *Carson* thus instructs courts to determine whether the funds *were* sufficiently "substantial" at the time of receipt, not whether the aggregate of savings

*are* sufficiently substantial after they have accumulated over time. *Id.*

Finally, in *United States v. Saemisch*,[3] the First Circuit held that "a district court must examine the source or sources of an inmate's account before it may order the turnover of funds contained in that account under" § 3664(n). 70 F.4th 1, 11 (1st Cir. 2023). If that "examination discloses that the monies in the account consist only of gradually accumulated prison wages or other funds that do not qualify as 'substantial resources,' section 3664(n) is not implicated."[4] *Id.* (citing *Kidd*, 23 F.4th at 787, and *Hughes*, 914 F.3d at 951). The First Circuit instructed lower courts to "examine the source" of the funds received and to determine whether those funds were substantial when deposited. *Id.* Like the Sixth Circuit, the First Circuit recognizes that the question of whether a resource is substantial must be assessed at the time of receipt.

Against the weight of this authority, the majority opinion held that § 3664(n) applies "to substantial aggregated sums from multiple sources—like family and friends—that gradually accrue in an inmate's trust account." *Myers*, 136

[3] Our concurring colleague maintains that *Saemisch* "relied on the reasoning in the Fifth Circuit's decision in *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019)." Concurrence at 35. Not so. *Saemisch* repeatedly cites to the Sixth Circuit's decision in *Carson* and to the Eighth Circuit's decision in *Kidd*. *See Saemisch*, 70 F.4th at 5, 6, 11.

[4] In *Saemisch*, the First Circuit held that the funds in the account constituted substantial resources, as the defendant had received "$10,555 from the settlement of a lawsuit" and "$1,725 in COVID-related stimulus checks." 70 F.4th at 4, 12. Under my reading of the statute, such resources would be subject to § 3664(n) because the resources were substantial at the time of receipt, i.e., when they were deposited in the inmate trust fund account.

F.4th at 922.  The majority thus creates a circuit split in an area of law which is best applied uniformly nationwide.  As noted by Myers, "the circuit split the majority creates will produce a situation [in which] different inmates in the same federal prisons will be subject to different rules based on the happenstance of whether they were sentenced in the Ninth Circuit."  Pet. Reh'g En Banc at 2.

## B.  Application of § 3664(n) to Prison Wages

"There is an emerging consensus across circuits exempting prison wages from § 3664(n)."  *Myers*, 136 F.4th at 931 (McKeown, J., dissenting); *see also* Resp. to Pet. Reh'g En Banc at 9 ("Appellant is correct that the consensus among circuits is that prison wages are exempt from § 3664(n).").  As discussed above, the First, Fifth, Sixth, and Eighth circuits have all rejected the argument that § 3664(n) applies to accumulated prison wages.  *See Saemisch*, 70 F.4th at 11; *Hughes*, 914 F.3d at 951; *Carson*, 55 F.4th at 1057; *Kidd*, 23 F.4th at 783.

The panel has now amended its opinion to state: "Nothing in this opinion should be construed as preventing a future panel from agreeing with these other circuits on the issue of exempting prison wages."  *Myers*, Amended Op. at 18 n.3.  But its holding, read broadly, naturally would extend § 3664(n) to prison wages that can become "substantial" if saved over time.  Indeed, as of 2022, Myers had $2,747.25 in prison wages since 2013, *Myers*, 136 F.4th at 929, which is more than the $1,233.73 found to be substantial in this case.

## V.  CONSEQUENCES

This case involves questions of exceptional national importance for prison management, inmates, and the courts.

Confiscating funds from inmates in amounts as low as here that have accumulated over time removes the ability of inmates to pay for the high cost of incarceration and will harm inmates' chances of rehabilitation and successful reintegration into society.

Inmates need money to purchase necessities that prisons fail to provide. Inmates must purchase basic health supplies, such as toothpaste, soap, and feminine hygiene products. Fed. Bureau of Prisons, *Program Statement 4500.12: Trust Fund/Deposit Fund Manual*, U.S. Dep't of Just. 34–35 (March 14, 2018).[5] They must pay for laundry and copy services. *Id.* at 33. The BOP charges inmates for some health care visits, 28 C.F.R. § 549.70, and some medications, 28 C.F.R. § 549.30. And these necessities often cost more at the commissary than they do outside prison. *See* Fed. Bureau of Prisons, *Program Statement 4500.12*, at 38 (requiring a 30-40% price markup on most commissary items).

While costs inside prisons are high, wages are low. Families and friends send money to cover the shortfall, at an average of $2,500 per inmate per year. *See* Br. for Nat'l Consumer L. Center & Fed. Defenders San Diego as Amici Curiae Supporting Defendant-Appellant, at 5. This money, along with inmates' earned prison wages, gets deposited into an "inmate trust account." Anna VanCleave, *Prison Banking*, 112 CAL. L. REV. 1699, 1702–03 (2024); *see also* 28 C.F.R. § 506.1. Inmates use money from that account to pay for their financial obligations, buy necessities at the

---

[5] Available at: https://www.bop.gov/policy/progstat/4500.12.pdf [https://perma.cc/258S-M3CR].

commissary, purchase phone credits, and save for their release.

Seizing money saved by inmates will harm rehabilitation efforts.  Inmates must pay to stay in contact with loved ones: they are "responsible for the expenses of [their] telephone use," 28 C.F.R. § 540.105, and for purchasing postage stamps, 28 C.F.R. § 540.21.  According to the BOP, phone privileges are useful because allowing inmates to maintain "contact with family and community ties is a valuable tool" and part of its overall correctional management process. BOP, *Inmate Telephone Regulations*, Program Statement 5264.08, 1 (Feb. 11, 2008).[6]  When inmates cannot afford to communicate with family or friends, they are more likely to misbehave in prison, suffer negative mental health consequences, and reoffend in the future.  Leah Wang*, Research Roundup: The positive impacts of family contact for incarcerated people and families*, PRISON POLICY INITIATIVE (Dec. 21, 2021).[7]

Seizing an inmate's savings before release also harms his chances of successful reentry into society, increasing the risk of recidivism and decreasing the likelihood that he will ever be able to afford full restitution.  Indeed, "the availability of financial resources" is an important part of an inmate's re-entry plan.  BOP, *Proposed Rules: Inmate Financial Responsibility Program*, 88 Fed. Reg. 1331, 1331 (Jan. 10, 2023).  Money is required for life's necessary expenses: housing, food, and clothing.  Money also enables individuals

---

[6]  Available at:  https://www.bop.gov/policy/progstat/5264_008.pdf [https://perma.cc/EJ8G-UNUY].

[7] Available at:
https://www.prisonpolicy.org/blog/2021/12/21/family_contact/ [https://perma.cc/N8JW-V2YD].

to obtain employment, as individuals often must pay for transportation, internet access, and a permanent mailing address to apply for jobs.  Recognizing the importance of savings for a successful reentry, the First Step Act mandates that 15 percent of compensation from certain prison jobs "be reserved . . . to assist the inmate with costs associated with release."     18  U.S.C.  § 4126(c)(4).     Myers  himself understands the importance of saving money for reentry: in his *pro se* briefing before the district court, he explained that he has "saved money each month" from prison earnings because "[h]e knows that getting out of prison broke makes a person more likely to re-offend."  Def.'s Mot. for Hearing on Seizure of Prison Account at 5, *Myers*, 2023 WL 7017707, ECF No. 266.

The panel majority's opinion threatens inmates' ability to save even relatively modest amounts of money.  Here, the $1,233.73 that Myers saved over almost a decade was deemed substantial and was turned over to the government. And because § 3664(n) provides for the automatic and mandatory seizure of an inmate's funds, the district court judge was precluded from considering any circumstances unique to Myers before ordering the turnover.

Inmates will have no incentive to save if they know that the government can automatically seize their savings whenever it deems them "substantial."  Family and friends will have no incentive to send the money necessary to run prisons if they know that the money they send can be automatically seized by the government any time the account reaches a relatively modest threshold.  And the BOP's carefully constructed IFRP—designed to promote good inmate behavior and efficient prison operations, while also ensuring that inmates meet their financial obligations—will be made functionally obsolete.

## VI.   CONCLUSION

The panel majority's opinion incorrectly interprets the MVRA, creates a circuit split, and will result in troubling consequences for federal prison management and federal inmates in the Ninth Circuit.  For these reasons, this appeal merited rehearing by our en banc court.

---

McKEOWN, Senior Circuit Judge, joined by W. FLETCHER and PAEZ, Senior Circuit Judges, respecting the denial of rehearing en banc:

I write in agreement with Judge Wardlaw's dissent from denial of rehearing en banc. For the reasons Judge Wardlaw's dissent and my panel dissent explain, the majority erroneously held that 18 U.S.C.§ 3664(n) extends not just to resources that are substantial at the time of receipt, but to *any* "gradual accumulation of periodic deposits" that becomes substantial at some later time. A principled reading of the statute does not support that result.